Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CONRAD REYNOLDSON, STUART PIXLEY, and DAVID WHEDBEE, on behalf of themselves and all others similarly situated,<br><br>                  Plaintiffs,<br><br>v.<br><br>CITY OF SEATTLE, a public entity,<br><br>                  Defendant. | No. 2:15-cv-01608-BJR<br><br>**DECLARATION OF TIMOTHY P. FOX IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF REASONABLE ATTORNEYS' FEES, COSTS, AND EXPENSES**<br><br>**CLASS ACTION** |

I, Timothy P. Fox, declare as follows:

1.      I am an attorney of record for the Plaintiffs in this action, and I, along with my co-counsel, was appointed by the Court to be Class Counsel on behalf of the certified class in this case. I am familiar with the facts stated below based on my own personal knowledge, and if called upon could and would testify competently about them.

2.      I make this declaration in support of the Parties' Joint Motion for an Award of Reasonable Attorneys' Fees, Costs, and Expenses.

3.      Attached hereto as Exhibit 1 is a true and correct copy of the Proposed Consent Decree.

Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
Tel: (303) 757-7901; Fax: (303) 595-9705

617590.3

4.      As set forth in detail below, the Proposed Consent Decree is the product of more than three years of arms-length negotiation between the parties, involving extensive analysis of massive amounts of data, and resulting in a settlement providing significant benefits to the class.

**Investigation by Class Counsel**

5.      Plaintiffs allege in this case that the City of Seattle ("Seattle" or "the City") has violated Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794, *et seq.*), Title II of the Americans with Disabilities Act (42 U.S.C. § 12131, *et seq.*), and the Washington Law Against Discrimination (Wash. Rev. Code §§ 49.60.010 *et seq.*), by failing to install and maintain curb ramps that are necessary to make its pedestrian right of way readily accessible to people with mobility disabilities, and to comply with its obligation to install and/or remediate curb ramps when it engages in alterations or new construction of streets and sidewalks.

6.      Class Counsels' investigation of whether Seattle has complied with the alterations and new construction requirements of these laws involved identifying streets and sidewalks that have been altered since 1977 (the effective date of Section 504), and then determining whether the corners adjacent to these alterations contain compliant curb ramps.

7.      This process required review and analysis of massive amounts of information concerning alterations to Seattle streets and sidewalks, as well as the results of surveys of Seattle corners and curb ramps. For example, Class Counsel reviewed and analyzed: (a) a spreadsheet identifying more than 2000 multi-block segments of Seattle streets that have been altered since 1977; (b) images from Google Street view showing recent conditions of corners in Seattle's pedestrian right of way; (c) a database with information from a 2008 survey of Seattle pedestrian right of ways containing more than 135,000 entries; (d) a survey conducted in 2015 and 2016 of

Case No. 2:15-cv-01608-BJR
DECLARATION OF TIMOTHY P. FOX
Page 2

Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
Tel: (303) 757-7901; Fax: (303) 595-9705

617590.3

1  more than 26,000 corners and curb ramps in Seattle; and (e) an audit conducted by Seattle with

2  its analysis of its past compliance with alterations and new construction requirements.

3        8.    Class Counsel created a database to be able to analyze all of this information in

4  the aggregate. This database allowed Class Counsel to have a thorough understanding of the

5  scope of the potential violations in this case.

6        9.    In addition, Class Counsel conducted their own in-person inspections of various

7  curb ramps and sidewalk corners in Seattle's pedestrian right of way.

8       10.    Class Counsel also conducted an investigation addressing Seattle's compliance

9  with the "programmatic access" provisions of Section 504 and Title II, which require covered

10  entities to operate their programs or activities so that when those programs or activities are

11  viewed in their entirety, they are readily accessible to and usable by individuals with disabilities.

12       11.    Class Counsel analyzed sample geographical areas of Seattle to determine

13  whether persons with mobility disabilities, in light of existing curb ramps in those areas, were

14  provided with programmatic access.

15       12.    Finally, Class Counsel obtained and analyzed current and historic City policies

16  concerning installation of curb ramps.

17

**Settlement Negotiations**

18       13.    Class Counsel sent a demand letter to the offices of the Seattle City Attorney and

19  Seattle Department of Transportation ("SDOT") on January 17, 2014, setting forth Plaintiffs'

20  view that the City's pedestrian right of way lacked adequate curb ramps that comply with

21  applicable requirements of federal and Washington State disability rights laws, providing

22  supporting documentation that identified hundreds of specific locations where curb ramps were

23  missing, and asking the City to enter into an agreement to negotiate a resolution of claims

Case No. 2:15-cv-01608-BJR
DECLARATION OF TIMOTHY P. FOX
Page 3

Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
Tel: (303) 757-7901; Fax: (303) 595-9705

617590.3

1  regarding the lack of accessible curb ramps throughout Seattle without resort to litigation

2  ("structured negotiations agreement"). The structured negotiations agreement would toll the

3  claims of the class and provide a structure for further negotiations.

4        14.    The parties executed the structured negotiations agreement on February 19, 2014,

5  and commenced negotiations that would culminate more than three years later in the attached

6  Proposed Consent Decree.

7        15.    The parties structured their negotiations to discuss injunctive relief before

8  addressing attorneys' fees and costs. Only after the parties had reached agreement on injunctive

9  relief did they turn to the issue of fees.

10        16.    In September 2015, negotiations broke down, and Plaintiffs filed suit.

11  Nevertheless the parties continued to meet to try to resolve their disputes.

12        17.    Since filing this case, Plaintiffs have served the City with two sets of

13  interrogatories, two sets of requests for production of documents, and three sets of requests for

14  admission.  The purpose of these discovery requests was to clarify the scope of the City's

15  obligations under the ADA, Section 504, and WLAD, as well as identify future work needed to

16  ensure compliance with these statutes. As part of the discovery process, I understand based on

17  the City's representation, the City collected over 2.5 terabytes (TB) of data from SDOT. The

18  City provided this voluminous information regarding the City's past, present, and future work to

19  improve accessibility in the pedestrian rights-of-way to Plaintiffs, which my staff and I reviewed.

20  The City also provided Plaintiffs full and unrestricted access to SDOT's asset management

21  database ("Hansen") and the complete results of the KFH Survey. Finally, the City voluntarily

22  made SDOT staff available to the Plaintiffs on multiple occasions to provide information and

23  training on use of the Hansen database and other technical issues.

Case No. 2:15-cv-01608-BJR
DECLARATION OF TIMOTHY P. FOX
Page 4

Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
Tel: (303) 757-7901; Fax: (303) 595-9705

617590.3

18.     During their negotiations, the parties exchanged documents and information, met in person on at least seven different occasions, spoke by telephone numerous other times, and communicated extensively by email. These seven in-person meetings included four mediation sessions with Teresa A. Wakeen, a professional mediator jointly retained by the parties, which began on May 24, 2016. These mediations and the accompanying negotiations were time- and resource-intensive for both parties and ultimately succeeded in resolving this action.

## Terms of the Proposed Settlement

19.     As described further in the following paragraphs, if the Court enters the Proposed Consent Decree, the City will: (1) construct new curb ramps, and upgrade and maintain existing curb ramps; (2) update its transition plan; (3) engage in additional steps to supplement the surveys it has already conducted of the accessibility of sidewalk corners and curb ramps for individuals with mobility disabilities; (4) maintain a procedure for residents to request construction, repairs, and replacements of curb ramps; and (5) employ an ADA Coordinator. The Proposed Consent Decree also provides for monitoring by Plaintiffs and class counsel, procedures for dispute resolution, and release of certain claims.

20.     **Installation, Remediation, and Maintenance of Curb Ramps:** Commencing on July 1, 2017, and continuing for the next 18 years, the Proposed Consent Decree requires the installation or remediation of 1250 curb ramps in the City per year on average (the "Annual Commitment"), and requires the City to ensure that all new construction and alterations undertaken by the City (or by any third-party acting on the City's authority or behalf) comply with Washington state and federal law, and to use its best efforts to ensure that all third-party construction, alteration, and development projects comply with state and federal law regarding

Case No. 2:15-cv-01608-BJR
DECLARATION OF TIMOTHY P. FOX
Page 5

Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
Tel: (303) 757-7901; Fax: (303) 595-9705

617590.3

1    the installation, repair, and remediation of curb ramps. Proposed Consent Decree at §§ II.A. &

2    V.2-V.3.

3        21.    Access work performed pursuant to the Proposed Consent Decree shall be

4    performed in compliance with the 2010 Americans with Disabilities Act Standards for

5    Accessible Design ("ADA standards"), unless new federal standards become effective, or

6    applicable federal precedent is established, in which case those standards shall then become the

7    standard for accessibility under the Consent Decree. *Id.* at II.A. Where installation of a ramp

8    compliant with these standards during new construction would be structurally impracticable, or

9    where installation or remediation of an accessible ramp in connection with alterations would be

10   technically infeasible, the City will install or remediate the ramp to the extent not structurally

11   impracticable, or to the maximum extent feasible. *Id.* at V.2.1 & V.2.2.

12       22.    The Proposed Consent Decree also requires the City to maintain all accessible

13   curb ramps over which it has responsibility, ownership, or control so that those curb ramps are

14   readily accessible to and usable by persons with Mobility Disabilities, except for isolated or

15   temporary interruptions in access due to maintenance or repairs. *Id.* at § V.6.1.

16       23.    **Transition Plan:** Under the Proposed Consent Decree, the City will create a

17   Transition Plan that identifies, at least one year in advance, specific projects and specific curb

18   ramps to be installed, repaired, and remediated in fulfillment of the Annual Commitment. The

19   Transition Plan will be consistent with priorities set forth in regulations promulgated under the

20   ADA, and will also incorporate input from class members. *Id.* at § V.3.6.

21       24.    **Supplemental Survey Work:** During the course of the parties' settlement

22   negotiations, the City surveyed much of its pedestrian right-of-way with respect to whether

23   existing curb ramps comply with Washington state and federal accessibility standards. The

Case No. 2:15-cv-01608-BJR
DECLARATION OF TIMOTHY P. FOX
Page 6

Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
Tel: (303) 757-7901; Fax: (303) 595-9705

617590.3

1   Proposed Consent Decree requires the City to conduct a virtual review to determine whether curb

2   ramps exist in the portions of the pedestrian right-of-way that have not been surveyed, and to

3   take measurements of those ramps found to exist during the virtual review to determine whether

4   they comply with the curb ramp requirements of Washington state and federal law. *Id.* at § V.4.

5       25.    **Curb Ramp Request System:** The Proposed Consent Decree also commits the

6   City to continue to maintain a system through which people with disabilities may submit requests

7   for installation, remediation, and maintenance of accessible curb ramps, and subject to limited

8   and specified exceptions, to use its best efforts to remediate or install each requested accessible

9   curb ramp.  The Proposed Consent Decree requires the City to complete such installation or

10  remediation within 12 months of the request, a commitment that represents approximately a 50%

11  reduction in average construction time from the prior curb ramp request program. *Id.* at § V.5.

12      26.    **ADA Coordinator:** Pursuant to the Proposed Consent Decree, the Seattle

13  Department of Transportation will continue to employ an ADA Coordinator to assist in

14  developing and implementing the work required by the Decree. *Id.* § V.1.

15      27.    **Reporting and Monitoring:** On an annual basis, the City will provide Class

16  Counsel with information relevant to its compliance with the Proposed Consent Decree,

17  including: (a) a list of curb ramps that were installed or remediated during the previous year, and

18  access to photographs and other information concerning those curb ramps, as well as a list of

19  curb ramps that will be installed or remediated in the coming year; (b) access to documentation

20  and photographs concerning ramps subject to structural impracticality, technical infeasibility,

21  and maximum extent feasible determinations; (c) a description of all curb ramp requests made

22  during the previous year and their status; and (d) access to a database containing information

23  concerning curb ramps, and related mapping applications. *Id.* § V.7.1. In addition, the Proposed

Case No. 2:15-cv-01608-BJR
DECLARATION OF TIMOTHY P. FOX
Page 7

Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
Tel: (303) 757-7901; Fax: (303) 595-9705

617590.3

Consent Decree permits Class Counsel to conduct periodic inspections of the City's drawings and/or designs regarding accessible curb ramps, and to inspect work being done in the City's pedestrian rights of way to install accessible curb ramps. *Id.* § V.7.4.

28.     **Dispute Resolution:** If the Plaintiffs or class counsel believe that the City is not in compliance with the Proposed Consent Decree, they will first meet and confer with the City about the alleged non-compliance.  *Id.* § V.9.1.

29.     If the Parties are unable to resolve the dispute informally, they will submit the dispute to an agreed-upon mediator. *Id.* § V.9.2.  The Parties will engage in good-faith efforts to resolve the dispute through such mediation.  *Id.*

30.     The Parties will only move the Court to enforce the Proposed Consent Decree in the event that they are unable to resolve the dispute through the meet-and-confer or mediation process. *Id.* § V.9.3.

31.     **Release of Class Claims:** The Proposed Consent Decree resolves and releases, through the 18-year term of the Decree, all claims for injunctive, declaratory, or other non-monetary relief that were brought, could have been brought, or could be brought in the future relating to or arising from any of the City's alleged actions, omissions, incidents, or conduct related to the installation, remediation, repair, or maintenance of curb ramps in the City's pedestrian right of way. *Id.* § VIII.1. The Proposed Consent Decree does not provide for any monetary relief to the Settlement Class, and it does not release any damages claims that Settlement Class members may have. *Id.* It also does not release any claims relating to components of the City's sidewalk system other than curb ramps. *Id.* § VIII.2.

Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
Tel: (303) 757-7901; Fax: (303) 595-9705

617590.3

1

**Fairness and Adequacy of the Proposed Settlement**

2      32.      Based on Class Counsels' investigation and evaluation, and consultation with the

3 mediator and my co-counsel, I believe that the proposed Proposed Consent Decree is not only

4 fair, reasonable, and adequate, but represents an excellent result for the Class.

5      33.      Based on our investigations – including, as set forth above, extensive analysis of

6 alterations and survey data, eyewitness inspections of the pedestrian right of way, inspection of

7 photographs available on Google Street view, and information and documentation provided by

8 the City through open records act requests and made available during settlement negotiations –

9 Class Counsel are knowledgeable regarding the scope of the access problems for individuals

10 with mobility disabilities caused by missing and noncompliant curb ramps in Seattle's pedestrian

11 right of way.

12      34.      As stated in paragraph 20, above, the Proposed Consent Decree requires the

13 installation or remediation of 1250 ramps per year over an 18-year period, for a total of 22,500

14 ramps over the term of the Decree. I understand that the City has not historically tracked all

15 ramps constructed within the City by third parties, however, in past years, SDOT has installed an

16 average of 500 curb ramps per year.  As such, the City's commitment to ensure the construction

17 of 1,250 curb ramps per year results in an average 150% increase from pre-settlement levels of

18 City-constructed ramps.

19      35.      The City estimates that it costs approximately $12,500 to $13,000 to install a curb

20 ramp, and thus the value of the settlement is about $300 million, well into the nine figures.

21      36.      Based on the review of the various data described above, Class Counsel estimate

22 that there are approximately 17,000 missing curb ramps on corners with sidewalks in Seattle.

23

Case No. 2:15-cv-01608-BJR
DECLARATION OF TIMOTHY P. FOX
Page 9

Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
Tel: (303) 757-7901; Fax: (303) 595-9705

617590.3

The total number of curb ramps to be installed or remediated pursuant to the Decree is sufficient to address all of these corners, and to remediate a significant number of existing ramps as well.

37.     By the end of the Proposed Consent Decree, Seattle's curb ramp system will be substantially more accessible than it is today.

38.     The City's additional commitments under the Settlement Agreement, including its creation of an updated Transition Plan, its commitment to maintain all accessible curb ramps over which it has responsibility, ownership, or control, and its continued employment of an ADA coordinator, will ensure that compliance continues even after the Proposed Consent Decree expires.

### Experience and Qualifications of CREEC Attorneys

39.     The primary CREEC attorneys who worked on this case included myself (725.9 hours), Sarah Morris (123.2 hours), and Lauren Fontana (29.4 hours).[1] CREEC paralegals also worked on this case.

40.     The following chart sets forth the hours billed (after the exercise of billing judgment) by the various CREEC timekeepers:

| Timekeeper | Rate | Hours | Fees |
|---|---|---|---|
| A. Milkman (paralegal) | $175 | 15.7 | $2747.50 |
| C. Anderson (paralegal) | $175 | 1.4 | $245 |
| C. Hall (paralegal) | $175 | 66 | $11,550 |
| M. McGarry (paralegal) | $175 | 148.3 | $25,952.50 |
| S. Morris | $445 | 123.2 | $54,824 |
| L. Fontana | $475 | 29.4 | $13,965 |
| J. Wilensky | $550 | 5.4 | $2970 |
| T. Fox | $790 | 725.9 | $573,461 |
| **Total** | | **1115.3** | **$685,715** |

[1] Julie Wilensky also worked on this case, but for less than 6 hours.

Case No. 2:15-cv-01608-BJR
DECLARATION OF TIMOTHY P. FOX
Page 10

Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
Tel: (303) 757-7901; Fax: (303) 595-9705

617590.3

41.    A description of the qualifications of the CREEC attorneys who worked on this case follows.

42.    I am the Co-Executive Director of CREEC, a civil rights non-profit organization based in Denver, Colorado, with an office in Berkeley, California. My wife Amy Robertson and I founded CREEC in 2013 after operating as the public interest civil rights law firm Fox & Robertson, P.C. since 1996. Both at Fox & Robertson and as CREEC, my practice has been devoted to civil rights, with a focus on disability rights.

43.    I received my J.D. from Stanford Law School in 1991, where I was a member of the Stanford Law Review and president of my graduating class.

44.    I have served as class counsel in numerous disability discrimination class actions, including but not limited to: *CREEC v. RLJ Lodging Trust*, 2016 WL 314400, at *12 (N.D. Cal. Jan. 25, 2016) (settlement class counsel in class action challenging a hotel owner's failure to provide wheelchair accessible transportation services); *Vallabhapurapu et al., v. Burger King Corp.*, No. 11-cv-00667-WHA, 2012 WL 5349389 (N.D. Cal. Oct. 29, 2012) (class counsel in disability access suit resulting in $19 million in damages to class members and significant injunctive relief; settlement approved in 2012); *Castaneda, et al., v. Burger King Corp.*, No. 8-cv-04262-WHA, 2010 WL 2735091 (N.D. Cal. July 12, 2010) (class counsel in disability access suit resulting in $5 million to class members and significant injunctive relief); *Moeller v. Taco Bell*, 220 F.R.D. 604 (N.D. Cal. 2004) as amended at 2012 WL 3070863 (July 26, 2012) (class counsel in disability access suit challenging barriers to wheelchair and scooter access at restaurants in California; resolved after more than a decade of litigation in a settlement approved in 2014); *Lucas v. Kmart*, No. 99-cv-01923 JLK (D. Colo.) (class counsel in disability access suit resulting in $13 million in damages and significant injunctive relief); *Rossart v. Developmental*

Case No. 2:15-cv-01608-BJR
DECLARATION OF TIMOTHY P. FOX
Page 11

Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
Tel: (303) 757-7901; Fax: (303) 595-9705

617590.3

*Pathways, Inc.*, No. 06CV44709 (Denver Dist. Ct. Sept. 29, 2008) (class counsel in state-court class action that challenged state agency's failure to provide proper notice under Medicaid when certain benefits were denied of terminated); *Colorado Cross Disability Coalition v. City and County of Denver*, Civ. Action No. 06-cv-00865-LTB-BNB (D. Colo.) (class counsel in lawsuit that challenged accessibility barriers in opera house); *Commonwealth of Mass. v. E*TRADE Access, Inc.*, Civil Action No. 03-11206-MEL (D. Mass. Dec. 7, 2007) (class counsel in nationwide lawsuit that challenged inaccessibility of ATMs to blind people); *Colorado Cross-Disability Coalition v. Taco Bell Corp.,* 184 F.R.D. 354, 363 (D. Colo. 1999) (class counsel in lawsuit that challenged barriers to wheelchair and scooter access at restaurants in Colorado); *Farrar-Kuhn v. Conoco, Inc.,* Civil Action No. 99-MK-2086 (D. Colo.) (class counsel in lawsuit that challenged barriers to access at service stations in six states); *Colorado Cross-Disability Coalition v. Fey Concert Company*, Civil Action No. 97-Z-1586 (D. Colo) (class counsel in lawsuit that challenged ADA violations at large concert amphitheater).

45.      I am a member of the national board of directors of the American Civil Liberties Union as well as a member of the board of its Colorado affiliate.

46.      I have received a number of awards and recognition for my work.  For example, Ms. Robertson and I received the 2012 Award of Excellence from the Colorado Chapter of the American College of Trial Lawyers, the 2007 Impact Fund Award, the 2006 Case of the Year award from the Colorado Trial Lawyers Association, and I have been honored as a Fellow of the Colorado Bar Foundation, a designation bestowed upon no more than five percent of the lawyers in Colorado for "outstanding dedication to the welfare of the community, the traditions of the profession and the maintenance and advancement of the objectives of the Colorado Bar Association." In 2008, I received The Colorado Bar Association Award of Merit, the

Case No. 2:15-cv-01608-BJR
DECLARATION OF TIMOTHY P. FOX
Page 12

Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
Tel: (303) 757-7901; Fax: (303) 595-9705

617590.3

1   association's highest honor, which is given annually to a member for outstanding service to the

2   association, the legal profession, the administration of justice and the community.

3        47.    I had involvement in all facets of this case, including being co-lead in settlement

4   and litigation strategy, directing and supervising assignments, drafting or reviewing mediation

5   statements, pleadings and other documents, participation in all settlement meetings, and legal

6   research and analysis. My primary role, however, was the analysis of the massive amount of data

7   in this case. I created a Microsoft Access database, and incorporated into that database the data

8   we received from Seattle. This information came in the form of various spreadsheets, many of

9   which tracked information in different manners using different terminology. Thus after

10  incorporating this data into the database, we needed to identify and correlate the fields from the

11  different spreadsheets that contained the same type of information.

12       48.    As a result of this process, we were able to engage in extensive analysis of

13  Seattle's data, which in turn allowed us to have a full understanding of the number and types of

14  violations of various curb ramp requirements.

15       49.    In addition, the database allowed us to compare results from surveys identifying

16  corners with noncompliant ramps, with data identifying when those corners were subject to new

17  construction or alterations.

18       50.    My 2016 rate is $790 per hour. This is in line with my 2015 rate of $750 per hour,

19  which was approved in *CREEC v. Ashford Hosp. Trust, Inc.*, 2016 WL 1177950, at *5 (N.D. Cal.

20  Mar. 22, 2016), and was my 2016 rate approved in *CREEC v. RLJ Lodging Trust*, Case No. 4:15-

21  cv-00224-YGR (N.D. Cal. Docket no. 75).

22       51.    Sarah Morris received her law degree from Columbia University School of Law

23  in 2010. Prior to joining CREEC, Sarah was an associate at the Denver firm of Killmer, Lane &

Case No. 2:15-cv-01608-BJR
DECLARATION OF TIMOTHY P. FOX
Page 13

Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
Tel: (303) 757-7901; Fax: (303) 595-9705

617590.3

1  Newman, LLP, where she represented clients in civil rights cases involving constitutional law

2  and federal civil rights statutes. She left CREEC in early 2016.

3      52.    After the exercise of billing judgment, Ms. Morris billed 123.2 hours to this case.

4  This included interviewing and working with potential experts, conducting extensive legal

5  research, reviewing and analyzing documents and information provided by Seattle, and

6  participating in initial meetings with Seattle and the plaintiffs.

7      53.    Ms. Morris's 2016 billing rate was $445 per hour. This is in line with her 2015

8  billing rate of $430 per hour, which was approved by the court in *CREEC v. Ashford Hosp.*

9  *Trust, Inc.*, 2016 WL 1177950, at *5 (N.D. Cal. Mar. 22, 2016).

10     54.    Lauren Fontana graduated from The Ohio State University Mortiz College of Law

11  in 2008. She then clerked for two years, worked as an associate for several years at Killmer,

12  Lane & Newman, and spent two years teaching in the University of Denver Sturm College of

13  Law's Civil Rights Clinic. She left CREEC in the summer of 2016.

14     55.    Ms. Fontana worked less than 30 hours on this case. Her work consisted primarily

15  of reviewing documents and other information provided by Seattle.

16     56.    CREEC paralegals played an important role in this case. They reviewed and

17  analyzed documents and information provided by Seattle, wrote and followed up on open records

18  act requests, reviewed Google Street views of corners in Seattle, and generally had significant

19  involvement in the investigation of this case.

20     57.    I reviewed all CREEC time records and, in an exercise of billing judgment, I

21  eliminated entries totaling more than $60,000.

22     58.    CREEC incurred reasonable costs of $19,665.92, primarily consisting of travel

23  expenses and related costs.

Case No. 2:15-cv-01608-BJR
DECLARATION OF TIMOTHY P. FOX
Page 14

Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
Tel: (303) 757-7901; Fax: (303) 595-9705

617590.3

1    I declare under penalty of perjury under the laws of the State of Colorado and of the

2    United States that the foregoing is true and correct, and that this Declaration was executed this

3    6th day of September 2017, in Denver, Colorado.

4

5

6    _____
     Timothy P. Fox

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
Tel: (303) 757-7901; Fax: (303) 595-9705

617590.3

# EXHIBIT 1

Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CONRAD REYNOLDSON, STUART PIXLEY, and DAVID WHEDBEE, on behalf of themselves and all others similarly situated,<br><br>                                Plaintiffs,<br><br>        v.<br><br>CITY OF SEATTLE, a public entity,<br><br>                                Defendant. | No. 2:15-cv-01608 - BJR<br><br>[PROPOSED]<br>CONSENT DECREE<br><br><u>CLASS ACTION</u> |

## I.    <u>PRELIMINARY MATTERS</u>

A.    Plaintiffs in this matter are Conrad Reynoldson, Stuart Pixley, and David Whedbee (collectively the "Plaintiffs") and a class of persons similarly situated (the "Settlement Class," as defined below).  Defendant in this matter is the City of Seattle ("the City"), a public entity.  The City and the Plaintiffs shall be referred to in this Consent Decree individually as a "Party" and collectively as the "Parties."

B.    Each of the Plaintiffs is a resident of or frequent visitor to the City of Seattle ("the City") and is a person with a mobility disability who uses a wheelchair for mobility.  Each of the Plaintiffs is an individual with a disability within the meaning of Section 3(2) of the Americans

(Proposed) CONSENT DECREE - 1
Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

with Disabilities Act of 1990, 42 U.S.C. §§ 12101, 12102(2) ("ADA"), Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. §§ 705(20), 794(a) ("Section 504"), and Washington anti-

discrimination law, Wash. Rev. Code Ann. § 49.60.040(7)(a) ("WLAD").

C.    Plaintiffs' Complaint (ECF No. 1) alleges that the City has systemically failed to

ensure that its pedestrian right of way contains curb ramps that are necessary to make its

pedestrian right of way accessible to individuals with mobility disabilities, in violation of the

ADA, Section 504, and WLAD.  Specifically, Plaintiffs allege that the City has failed and

continues to fail to install and maintain curb ramps that are necessary to make its pedestrian right

of way readily accessible to individuals with mobility disabilities, and to comply with its

obligation to install and/or remediate curb ramps when it engages in alterations or new

construction of streets, bus stops, and sidewalks.  Plaintiffs further allege that a substantial

number of the street crossings within the City's pedestrian right of way do not comply with

applicable state and federal regulations addressing accessibility for people with disabilities

because, for example, they lack curb ramps entirely, have curb ramps on only one side of a

corner, have curb ramps that are too narrow, too steep, or too cracked, broken, or uplifted to be

used by individuals with mobility disabilities.

D.    On January 12, 2016, the City filed Defendant's Answer and Affirmative

Defenses to Complaint (ECF No. 22), which alleges that the City has complied with and is

continuing to comply with its obligations under the ADA, Section 504 and all other similar

statutes or laws by providing program access to people with disabilities; that the City has

complied with its planning obligations under Section 504 and the ADA via its continuously

updated Pedestrian Master Plan; that the City was engaged in an ADA Self-Evaluation survey of

curb ramps in the City at the time the Plaintiffs filed this action as a component of its

(Proposed) CONSENT DECREE - 2
Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

longstanding work to improve accessibility; and that the City's services, programs and activities, when viewed in their entirety are accessible to persons with disabilities.

E.    Pursuant to the Parties' stipulation, on May 2, 2016, the District Court certified this case as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2), finding that "The class is so numerous that joinder of all members is impracticable; there are questions of law and fact common to the class; the claims of the Named Plaintiffs are typical of the claims of the class; the Named Plaintiffs and their counsel will fairly and adequately protect the interests of the Class"; and "Plaintiffs allege that the City has acted or refused to act on grounds that apply generally to the Class, and this action seeks final injunctive relief and declaratory relief on behalf of the Class as a whole." Order Granting Stipulated Motion Regarding Class Certification Pursuant to Federal Rule of Civil Procedure 23(b)(2) (ECF No. 30), May 2, 2016. The Court certified the following class of persons for declaratory and injunctive relief only: "All persons (including residents of and/or visitors to the City of Seattle) with any mobility disability, who, at any time prior to judgment in this action, have been denied full and equal access to the City of Seattle's pedestrian right of way due to the lack of a curb ramp or a curb ramp that was damaged, in need of repair, or otherwise in a condition not suitable or sufficient for use." *Id.* at 2. The Court appointed Plaintiffs Conrad Reynoldson, Stuart Pixley, and David Whedbee as Class Representatives, and Goldstein, Borgen, Dardarian & Ho, the Civil Rights Education and Enforcement Center, and Disability Rights Washington as Class Counsel. *Id.*

F.    During the pendency of negotiations between the Parties' and the course of this Action, the City, Plaintiffs and Class Counsel (as defined below) undertook informal and formal discovery and engaged in extensive discussions regarding a potential resolution and settlement of the alleged claims, including in mediation before a private mediator. As a result of such

(Proposed) CONSENT DECREE - 3
Case No. 2:15-cv-01608-BJR
679981.5

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

20044 00011 gf26f2104e

discussions, the Parties now wish to effect a complete resolution and settlement of the claims alleged in Plaintiffs' Complaint, and to resolve their differences and disputes by settling such claims, disputes and controversies under the terms set forth in this Consent Decree.

G.    In entering into this settlement, the Parties intend to resolve any and all claims that either were or could have been asserted in this Action on behalf of individuals with Mobility Disabilities for declaratory and injunctive relief with respect to curb ramps in the City's pedestrian right of way, subject to the Release of Claims set forth in Section VII below.  Said settlement is expressly intended to assure that no further lawsuits for these claims for declaratory and injunctive relief may be maintained at any time during the Term of this Consent Decree, and that the City will not be subject to conflicting judgments regarding compliance with Access standards regarding curb ramps in the City's pedestrian right of way throughout the Term of this Decree.

H.    In entering into this Consent Decree, the City does not admit that it has violated or failed to comply with or has any liability to Plaintiffs or the Settlement Class under any provisions of the ADA, Section 504, or any applicable laws of the State of Washington relating to accessibility for persons with mobility disabilities to the pedestrian right of way, any regulations or guidelines promulgated pursuant to those statutes, or any other applicable laws, regulations, or legal requirements.  In fact, the City expressly denies and disputes, and continues to deny and dispute, the claims and contentions by Plaintiffs, and does not admit any liability to Plaintiffs or the Settlement Class.  Neither this Consent Decree nor any of its terms or provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by the City of any such violation or failure to comply with any applicable law.  This Consent Decree and its terms and provisions shall not be offered or received as evidence for any purpose

(Proposed) CONSENT DECREE - 4
Case No. 2:15-cv-01608-BJR
679981.5

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

20044 00011 gf26f2104e

whatsoever against the City in any action or proceeding, other than a proceeding to enforce the terms of this Consent Decree.

I.      This Consent Decree, and the releases contained herein, only apply to curb ramps on the City's street segments with Pedestrian Walkways, and do not apply to components of the City's sidewalk system other than curb ramps.

J.      Section titles and other headings contained in this Consent Decree included only for ease of reference and shall have no substantive effect.

## II.    DEFINITIONS

For purposes of this Consent Decree, the following terms have the following definitions:

A.      "Access" or "Accessible," unless otherwise indicated, means conditions that comply with the standards set forth in the 2010 Americans with Disabilities Act ("ADA") Standards for Accessible Design, codified at 28 C.F.R. § 35.151 and 36 C.F.R. part 1191, and Appendices B and D (hereafter "2010 ADA Standards").  Access work performed pursuant to this Consent Decree shall be performed in compliance with the 2010 ADA Standards.  If during the term of this Consent Decree any new federal disability access design standards that apply to the pedestrian right of way become effective, or as applicable federal precedent is established, those standards shall then become the standard for accessibility under this Consent Decree. Curb ramps, raised crosswalks or other accessible crossings that meet the 2010 ADA Standards or any subsequently applicable standards are referred to herein as "Accessible Curb Ramps."

B.      "Altered," when used in reference to work performed as part of street, roadway, or highway resurfacing, means those alterations identified in the Department of Justice/Department of Transportation Joint Technical Assistance on the Title II of the Americans with Disabilities Act Requirements to Provide Curb Ramps when Streets, Roads, or Highways

(Proposed) CONSENT DECREE - 5
Case No. 2:15-cv-01608-BJR
679981.5

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

are Altered through Resurfacing," found at www.ada.gov/doj-fhwa-ta.htm.  Specified alterations include but are not limited to the addition of a new layer of asphalt, reconstruction, concrete pavement rehabilitation and reconstruction, open-graded surface course, microsurfacing and thin lift overlays, cape seals, and in-place asphalt recycling when the work on a street or roadway spans from one intersection to another, and includes overlays of additional material to the road surface.  Treatments that serve solely to seal and protect the road surface, improve friction, and control splash and spray are considered to be maintenance, not alterations, because they do not significantly affect the public's access to or usability of the road.  Some examples of the types of treatments that would normally be considered maintenance are:  painting or striping lanes, crack filling and sealing, surface sealing, chip seals, slurry seals, fog seals, scrub sealing, joint crack seals, joint repairs, dowel bar retrofit, spot high-friction treatments, diamond grinding, and pavement patching.

C.     "Americans with Disabilities Act" or "ADA" means the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq., and the 2010 ADA Standards.

D.     "Best Efforts" means the efforts a reasonable entity in the City's position would use to perform that obligation in good faith.

E.     "Class Counsel" means collectively Disability Rights Washington, Civil Rights Education and Enforcement Center, and the law firm of Goldstein Borgen Dardarian & Ho.

F.     "Compliant Curb Ramp" means any curb ramp designed prior to the Effective Date and built in compliance with either the 2010 ADA Standards or, if built or altered prior to March 15, 2012, the 1991 Americans with Disabilities Act Standards for Accessible Design ("ADAAG"), codified at 28 C.F.R., Part 36, including Appendix A, or other federal design standards in effect at the time of design and construction.

(Proposed) CONSENT DECREE - 6
Case No. 2:15-cv-01608-BJR
679981.5

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

G.    "Compliance Period" means the period of time that commences on the Effective Date and continues until July 1, 2035, or as extended by agreement of the Parties as detailed in Section IV below.  .

H.    "Effective Date" means the date upon which the Consent Decree becomes a Final Judgment of the District Court presiding over this Action.

I.    "Existing Pedestrian Facilities," for purposes of this Consent Decree, means any Pedestrian Facilities, or portions thereof, where construction was commenced prior to the Effective Date of this Consent Decree.

J.    "Fairness Hearing" means the hearing to be held by the District Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, to determine whether the settlement set forth in this Consent Decree should be approved.

K.    "Final," as applied to the term "Judgment" (as defined below), means that (i) the time for appeal or writ has expired and no appeal or petition for review has been taken, or (ii) if an appeal or petition for review is taken and the settlement set forth in this Consent Decree has been affirmed in full, the time period during which any further appeal or review can be sought (including through any appeal, petition for review, writ of certiorari or otherwise) has expired and no such further appeal or review has been sought.  In the event that no objections to this Consent Decree are raised prior to or at the Fairness Hearing, that any objections that have been raised have been fully and formally withdrawn, or that no viable objections otherwise exist at the time of the Fairness Hearing, the Judgment shall become "Final" as of the District Court's issuance of the Judgment.  If the Judgment is set aside, materially modified, disapproved or overturned by any court, and is not fully reinstated on further appeal or review, the Judgment shall not become or be "Final."

(Proposed) CONSENT DECREE - 7
Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

L.      "Final Approval" means the order by the District Court, after notice and the holding of the Fairness Hearing, granting approval of this Consent Decree Agreement under Rule 23(a) of the Federal Rules of Civil Procedure.

M.      "Judgment" means a judgment entered by the District Court in this Action, substantially in the form attached to this Consent Decree as Exhibit "D", which, among other things, fully approves this Consent Decree and retains the District Court's jurisdiction to enforce the Consent Decree throughout its term.

N.      "Marginally Longer Route" means an additional distance of no more than 200 feet that a person with a Mobility Disability may need to travel from a non-compliant curb ramp to reach a Compliant Curb Ramp or Accessible Curb Ramp.

O.      "Mobility Disability" or "Mobility Disabilities" means any impairment or medical condition that limits a person's ability to walk, ambulate, maneuver around objects, or to ascend or descend steps or slopes.  A person with a Mobility Disability may or may not use a wheelchair, scooter, electric personal assisted mobility device, crutches, walker, cane, brace, orthopedic device, or similar equipment or device to assist her or his navigation along a pedestrian walkway, or may be semi-ambulatory.

P.      "New Construction and Alterations" means all work required to be performed, pursuant to 28 C.F.R. § 35.151, in connection with newly-constructed or Altered intersections, streets, roads, and highways in the City during the Term of the Consent Decree.

Q.      "Notice of Settlement" means the notice substantially in the form attached to this Consent Decree as Exhibit "B", to be provided to the Settlement Class as set forth in Section VII below.

R.      "Pedestrian Facility" or "Pedestrian Facilities" means any intersection, street,

(Proposed) CONSENT DECREE - 8
Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

1    Pedestrian Walkway, crosswalk, curb, curb ramp, walkway, pedestrian right of way, pedestrian
2    undercrossing, pedestrian overcrossing, or other pedestrian pathway or walk of any kind that is,
3    in whole or in part, owned, controlled or maintained by or otherwise within the responsibility of
4    the City of Seattle.

5    S.    "Pedestrian Walkway" means a sidewalk or other prepared exterior surface
6    provided for pedestrian travel in the public right of way that is, in whole or in part, owned,
7    controlled or maintained by or otherwise within the responsibility of the City of Seattle.

8    T.    "Preliminary Approval" means the preliminary approval of this Consent Decree
9    by the District Court as described in Section VII below.

10    U.    "SDOT ADA Coordinator" means the access specialist previously hired by the
11    Seattle Department of Transportation (SDOT) pursuant to and in accordance with the terms of
12    Section V.1, below.

13    V.    "Section 504" means Section 504 of the Rehabilitation Act of 1973, codified at
14    29 U.S.C. § 794, et seq.

15    W.    "Settlement Class" means the class of all persons (including residents of and/or
16    visitors to the City of Seattle) with any Mobility Disability, who, at any time prior to judgment
17    and/or through the Term of this Consent Decree, have been denied full and equal access to the
18    City of Seattle's pedestrian right of way due to the lack of a curb ramp or a curb ramp that was
19    damaged, in need of repair, or otherwise in a condition not suitable or sufficient for use.
20    Members of the "Settlement Class" are referred to as "Class Members" throughout this Decree.

21    X.    "Structural Impracticability" means the rare circumstances when an Accessible
22    Curb Ramp cannot be installed during construction of new Pedestrian Facilities because the
23    unique characteristics of terrain prevent incorporation of Accessible Curb Ramps.  *See* 28 C.F.R.

(Proposed) CONSENT DECREE - 9
Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

§ 35.151(a)(2)(i).

Y.      "Technical Infeasibility" or "Technically Infeasible" means the instances when an Accessible Curb Ramp cannot be installed during alterations to Existing Pedestrian Facilities because of physical or site constraints.  *See* 2010 ADAAG 106.5.

Z.      "WCAG" means version 2.0 Level AA of the "Web Content Accessibility Guidelines" published by the Web Accessibility Initiative (WAI) of the World Wide Web Consortium (W3C), or any subsequent version(s) that are published during the Term of the Consent Decree.

## III.    JURISDICTION

The United States District Court for the Western District of Washington has jurisdiction over the Parties and the subject matter of this Action.  The Complaint asserts claims that, if proven, would authorize the Court to grant the relief set forth in this Consent Decree.  Venue is proper in this Court.  All claims resolved by this Consent Decree shall be dismissed with prejudice upon the Effective Date of this Consent Decree.  This Court shall retain jurisdiction of the Action during the Term of the Consent Decree, as set forth in Section IV.2, below, for the purpose of entering all orders that may be necessary to implement the relief provided for and enforce any obligations herein.

## IV.    EFFECTIVE DATE AND DURATION OF THE CONSENT DECREE

This Consent Decree and the agreements contained herein shall become effective on the Effective Date and shall remain in effect until the latter of either the completion of the Compliance Period or, if applicable, the conclusion of any dispute resolution proceedings or action to enforce the Consent Decree ("Term of the Consent Decree").  The Consent Decree shall thereupon expire except insofar as claims are released, as set forth in Section VIII.

(Proposed) CONSENT DECREE - 10
Case No. 2:15-cv-01608-BJR
679981.5

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

20044 00011 gf26f2104e

At least 60 days prior to the conclusion of the Compliance Period, the City, at its sole discretion, may elect to extend the Term of this Consent Decree.  If it chooses to do so, all of the terms of the Consent Decree shall continue to apply, and the Parties will jointly move the court to approve the extension.

## V.   INJUNCTIVE RELIEF

1.   **SDOT ADA Coordinator**

1.1.   As of the Effective Date and during the course of the Parties' negotiations, the City has hired, consistent with applicable City contracting requirements, an ADA Coordinator for the Seattle Department of Transportation ("SDOT ADA Coordinator").

1.2.   Throughout the Term of the Consent Decree, the SDOT ADA Coordinator position shall be filled with an individual who has qualifications comparable to the following: (i) experience in evaluating or assisting public entities in evaluating the accessibility of facilities under Title II of the ADA and Section 504; (ii) knowledge of current federal and state accessibility standards; (iii) a minimum of five (5) years' experience in providing ADA consulting services related to accessible facilities; and (iv) a degree in civil engineering, urban planning, or architecture. The City retains sole discretion on the selection of the ADA Coordinator, provided that the candidate selected substantially satisfies these criteria.

1.3.   The SDOT ADA Coordinator shall be retained and directed by the City throughout the Term of the Consent Decree and will assist in developing and implementing the work set forth below.

1.4.   In addition to the SDOT ADA Coordinator, the City may, at its sole discretion, continue to retain Karen Braitmayer or another consultant for technical assistance throughout the Term of the Consent Decree. In selecting the consultant, the City will give

(Proposed) CONSENT DECREE - 11
Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

1   priority consideration to candidates who have Mobility Disabilities, where otherwise equally

2   qualified.

3       2.      **New Construction and Alterations**

4       2.1     Throughout the Term of the Consent Decree, the City shall continue to

5   ensure that all Pedestrian Facilities, as well as highways, roadways, and streets that include

6   Pedestrian Walkways, which are newly constructed by or on its behalf on or after the Effective

7   Date, include the installation of Accessible Curb Ramps, as required by 28 C.F.R. § 35.151(a),

8

9   except where the City can demonstrate that installation of Accessible Curb Ramps is Structurally

10  Impracticable.  In any such circumstance where installation of an Accessible Curb Ramp would

11  be Structurally Impracticable, the portion of the subject curb ramp that can be made Accessible

12  shall be made Accessible to the extent it is not Structurally Impracticable.

13      2.2     Throughout the Term of the Decree, whenever the City (or any third-party

14  acting with the City's authority and on the City's behalf) Alters the City's Pedestrian Facilities,

15  roadways, highways, and crossings, it will upgrade existing but non-Compliant Curb Ramps

16  and/or install new Accessible Curb Ramps, as required by 28 C.F.R. § 35.151(b), except where

17  the City can demonstrate that the installation of Accessible Curb Ramps is Technically

18  Infeasible.  In any such circumstance where the installation of an Accessible Curb Ramp is

19  Technically Infeasible, the subject curb ramp shall be addressed with alternative curb ramp

20  designs.  Such curb ramp installation or remediation shall be performed at the same time period

21

22  that the Alteration project is being performed or reasonably thereafter.  This time period for

23  installing or remediating a curb ramp may be extended up to one year following completion of

24  the Alteration project in two circumstances: (1) where the Alteration to the City's Pedestrian

25  Facility was unplanned due to an emergency or not previously identified in the Transition Plan;

26

27

(Proposed) CONSENT DECREE - 12

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

or (2) where the subject curb ramp is scheduled to be constructed in the course of another project within one year of the completion of the Alteration.

2.3    Throughout the Term of the Decree, whenever the City (or any third-party acting with the City's authority and on the City's behalf) performs New Construction and Alterations in the pedestrian right of way the City shall ensure that accessible temporary routes are provided and have appropriate signage directing persons with Mobility Disabilities to such accessible temporary routes.

2.4    Throughout the Term of the Decree, the City shall use Best Efforts to ensure that all third-party construction, alteration, and development projects that include New Construction of Pedestrian Facilities or Alterations to the pedestrian right of way within the City are performed in compliance with the terms of this Section, with the exception of curb ramps installed or remediated by the Washington State Department of Transportation for which the City lacks oversight responsibility.

2.5    Within 30 days of the Effective Date, the City will provide Plaintiffs with the City's protocols governing the permitting and architectural plan review and approval process for ensuring that all third-party construction, alteration and development projects that include installation or remediation of curb ramps comply with Section 4.4.  Such protocols will require SDOT's approval of plans prior to curb ramp installation or remediation, on-site inspection of installed or remediated curb ramps by trained SDOT inspectors, and training of all inspectors upon hiring and annually thereafter.

3.    **Installation of Accessible Curb Ramps During the Term of the Decree**

3.1    **Annual Accessible Curb Ramp Commitment**

Commencing on July 1, 2017 and continuing for 18 years, the City shall ensure the

(Proposed) CONSENT DECREE - 13
Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

installation and/or remediation of a certain number of Accessible Curb Ramps in the City each calendar year. This number shall be known as the "Annual Commitment." For the period commencing July 1, 2017 and ending on December 31, 2017, the Annual Commitment shall be 625 ramps. For the period commencing January 1, 2035 and ending on July 1, 2035, the Annual Commitment shall be 625 ramps. For all calendar years in between January 1, 2018 and December 31, 2034, the Annual Commitment shall be 1250 ramps. For purposes of the Decree, the Annual Commitment includes the installation of new Accessible Curb Ramps and remediation of existing non-Compliant curb ramps anywhere within the City by the City or by any third-party, and includes curb ramps that are remediated or installed pursuant to the Curb Ramp Request System. The City will ensure that curb ramps installed or remediated by third parties acting within the City's authority or on its behalf, or pursuant to a permit issued by the City, are Accessible Curb Ramps. Where installation or remediation of a curb ramp by a third party is Structurally Impracticable or Technically Infeasible, such ramp shall be Accessible to the extent not Structurally Impracticable, or to the maximum extent feasible, as set forth in Sections 2.1 and 2.2, above.

        3.2     If in any annual period other than 2017 or 2035, more Accessible Curb Ramps are installed within the City than the applicable Annual Commitment, the City may bank up to a total of 625 Accessible Curb Ramps that may be credited to any year in which less than the applicable Annual Commitment of Accessible Curb Ramps are installed to bring the total to the required number for that year. This excess shall be referred to as the "credit bank." The credit bank may be replenished and drawn down in the City's discretion but in no event can the bank exceed 625. If in any such annual period, the City experiences unexpected delays in major capital improvement projects based on factors outside of the City's control, then the applicable

(Proposed) CONSENT DECREE - 14
Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf2f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

Annual Commitment may be reduced in an amount not to exceed 225 Accessible Curb Ramps. This reduced amount shall be referred to as the "deficit bank." No ramps will be added to the deficit bank until the deficit bank is reduced to zero. The deficit bank shall be reduced to zero within two years, during which time the deficit ramps shall be installed in addition to the applicable Annual Commitment. During any year in which there are ramps in the deficit bank, the City may not reduce its Annual Commitment based on ramps in the credit bank.

3.3     The City may use any and all revenue sources available to it to fund its Annual Commitment. The Parties agree that, throughout the Term of the Decree, the City shall have sole and absolute discretion to determine the revenue sources it will use to fulfill the Annual Commitment.

3.4     Accessible Curb Ramps installed pursuant to the Curb Ramp Request System set forth in Section V.5, below, shall count toward the City's Annual Ramp Commitment.

3.5     **Prioritization of Accessible Curb Ramps for Existing Pedestrian Facilities**

To the extent not otherwise covered by planned New Construction or Alterations, Accessible Curb Ramps that the City installs at Existing Pedestrian Facilities throughout the Term of the Decree shall be selected in compliance with 28 C.F.R. § 35.150, in the order below:

a.     Government offices, facilities, and schools (including the pedestrian rights of way adjacent to facilities owned or operated by the City, and the paths of travel leading from such adjacent pedestrian rights of way to the primary entrances to such facilities);

b.     Transportation corridors;

(Proposed) CONSENT DECREE - 15
Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

c.    Hospitals, medical facilities, assisted living facilities and other similar

facilities;

d.    Places of public accommodation such as commercial and business zones;

e.    Facilities containing employers; and

f.    Residential neighborhoods.

3.6    The City will create a Transition Plan that is consistent with Section V.3.5.

The Transition Plan will identify, over a time period to be determined by the City but in no event

less than one year in advance, specific projects and specific curb ramps to be installed and

remediated in fulfillment of the Annual Commitment, exclusive of Accessible Curb Ramps

installed by third parties.  The Transition Plan will also plan for and prioritize curb ramps

identified through the Curb Ramp Request System as set forth in Section V.5 below.  The

Transition Plan will be updated periodically to specifically identify additional projects and curb

ramps to fulfill the Annual Commitment, including additional Curb Ramp Requests submitted

pursuant to the Curb Ramp Request System.  These Transition Plan updates shall be consistent

with the prioritization factors set forth in Section V.3.5, while incorporating input from Class

Members and government agencies.  The City will consult with Plaintiffs regarding the City's

solicitation of community and class member input regarding prioritization to ensure compliance

with Section V.3.5 including, but not limited to, providing Plaintiffs with a draft of any surveys

and a meaningful opportunity to comment on such draft(s) prior to dissemination, giving good

faith consideration to Plaintiffs' comments, and providing Plaintiffs with advance notice of

meetings with Class Members at which the City will seek such input into prioritization.  The City

will provide Plaintiffs with a draft of the Transition Plan and all subsequent updates for their

review and comment.  Plaintiffs will provide the City with feedback on the draft Transition Plan

(Proposed) CONSENT DECREE - 16

Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

and draft updates within thirty (30) days of receipt.  The City in good faith will consider and address Plaintiffs' comments.  The City will provide Plaintiffs with a final version of the Transition Plan and all subsequent updates.  If Plaintiffs believe the Transition Plan or any subsequent update does not comport with the terms of this agreement, Plaintiffs may utilize the dispute resolution process set forth in Section V.9 below.

3.7    In instances where installation of any Accessible Curb Ramp that falls within the prioritization criteria set forth in Section V.3.5, above, or requested pursuant to the Curb Ramp Request System set forth in Section V.5, below, would be Technically Infeasible, the City shall conduct such installation or repair to be Accessible to the maximum extent feasible, and shall consider the extent to which physical or site constraints can be addressed by an alternative curb ramp design or a raised crosswalk that meets the 2010 ADA Standards or any subsequently applicable standards.

3.8    The obligations of the City with respect to installing Accessible Curb Ramps at a particular location may also be postponed if the postponement is caused by or attributable to a force majeure (that is, due to acts of God, war, government regulations (other than regulations by the City), terrorism, disaster (including power outages), strikes, civil disorder, government declared fiscal emergency, or an emergency beyond the City's control that makes it illegal or impossible for the City to perform construction, alteration, or repair work).  Under this provision, the City's obligations may be tolled for the period of the force majeure's effect.

3.9    To the extent any Existing curb ramp is technically non-Compliant, but otherwise reasonably accessible to and navigable by individuals with Mobility Disabilities, the City may defer any potential repairs or reconstruction activities at said location(s) in favor of

(Proposed) CONSENT DECREE - 17
Case No. 2:15-cv-01608-BJR
679981.5

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

20044 00011 gf26f2104e

installing Accessible Curb Ramps elsewhere through the City in an effort to provide the greatest access possible given the resources available throughout the Term of the Decree.

3.10    Subject to the foregoing provisions of this Section, the City shall retain discretion to determine the means and methods of implementing the Annual Commitment set forth herein.

4.    **Further Updates to Curb Ramp Inventory**

4.1.    The City shall use its Best Efforts to complete a virtual review of curb ramp locations currently designated as "unknown" in the City's Hansen database before July 1, 2017 to determine the presence or absence of a curb ramp.  Such evaluation shall take place primarily by use of virtual mapping software (i.e., Google Maps) and shall consist of determining whether or not ramps exist at the specified locations, not technical compliance.  A determination that a ramp is not present does not necessarily mean that a ramp is appropriate or required for a particular location.  SDOT's Asset & Performance Management Group will retain sole discretion over the process by which evaluation of "unknown" locations shall proceed.  In addition, where the City determines that a curb ramp location designated as unknown does or does not have a curb ramp, that information will be added to the Hansen database, although SDOT's Asset & Performance Management Group will retain sole discretion about how such designations will be entered into the Hansen database.

4.2.    As soon as possible after the City completes the virtual evaluation of the "unknown" curb ramp locations, SDOT inspectors and/or staff shall conduct on-site measurements of curb ramps identified through the virtual evaluation.  Such measurements shall include, at a minimum, whether the curb ramps are consistent with the 2010 ADA Standards regarding the slope, cross slope, counter slope, width, and length of a curb ramp; the amount of

(Proposed) CONSENT DECREE - 18
Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

space at the curb ramp's lower landing, and whether it is flush with the street and within

crosswalk striping; the amount of clear space and slope of the curb ramp's upper landing; and the

existence and condition of a detectable warning on the curb ramp's surface. Documentation of

these measurements will be attached to the record for the subject ramp in the Hansen database.

The City will establish a schedule for completion of the on-site measurements once the virtual

review is complete.

4.3.    The City shall put in place recordkeeping requirements applicable to the

installation or alteration of any curb ramps within the City, whether installed by the City or third-

parties. Said requirements will mandate entry of relevant documentation, including maximum

extent feasible determinations and supporting documentation, into the Hansen database within 30

days of project completion.

5.    **Curb Ramp Request System**

5.1.    Throughout the Term of the Decree, the City shall continue to maintain a

system through which people with disabilities may submit requests for installation, remediation,

and maintenance of Accessible Curb Ramps ("Curb Ramp Request System"). Within thirty (30)

days of the Effective Date, the Parties will agree upon both the form for submitting requests, and

the method(s) for submitting requests, including through an easily locatable and accessible form

on the City's website that complies with WCAG, a toll-free telephone number, electronic mail,

standard mail, and/or other non-onerous methods for making requests. The request form may

require the following information: (i) the requestor's name, address and other contact

information; (ii) a statement that the requestor is a person with a disability or is making the

request on behalf of a person with a disability; (iii) the location of the curb ramp requested to be

installed, remediated, or repaired; and (v) the method preferred by the requestor to receive the

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

City's response to the Curb Ramp Request (e.g., by telephone, by electronic mail or by standard mail). The Plaintiffs and Class Members shall not be restricted from using the Curb Ramp Request System.

5.2.    The City shall document receipt of each Curb Ramp Request, assign each request a specific identification number (or other identifying information), and log the request into a software program or other electronic system that records the requestor's name and contact information, the date of the request, and the location of the requested curb ramp installation or repair. Within fifteen (15) days of receipt, the City shall notify the requestor that his or her request has been received and provide the requestor with the identification number or other identifying information assigned to the request.

5.3.    The City will use Best Efforts to investigate each request within 30 days of its receipt. Requests will be reviewed and investigated in the order received. Upon completion of the investigation, the City shall provide the requestor with an estimated date by which the City expects the Accessible Curb Ramp to be installed or repaired, if applicable, or the reasons why a curb ramp installation at the requested location is Structurally Impracticable or Technically Infeasible. If the City determines that a requested curb ramp installation is Structurally Impracticable, the City's response shall also notify the requestor that any portion of the requested curb ramp that can be made Accessible will be made Accessible to the extent that it is not Structurally Impracticable. If the City determines that a requested curb ramp installation is Technically Infeasible, the City's response shall notify the requestor that the subject ramp shall be made Accessible to the maximum extent feasible, and any physical and site constraints will be addressed with an alternative curb ramp design.

(Proposed) CONSENT DECREE - 20
Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

5.4.    The City shall use Best Efforts to install or repair each requested Accessible Curb Ramp within 12 months of the submission of the request.  This requirement includes all requests for Accessible Curb Ramps pending on the Effective Date.  This time period will be extended if (a) the City has already fulfilled its Annual Commitment (625 ramps for 2017 and 2035, and 1250 ramps for all other calendar years during the Term of the Decree), in which case the requested Accessible Curb Ramp will be installed or repaired as soon as practicable in the next Annual Commitment period; or (b) the curb ramp is targeted in the Transition Plan for installation or remediation within 18 months of the request, and the nature of that construction project would cause the curb ramp, were it to be remediated or installed prior to such construction, to be demolished.  Where installing or remediating a curb ramp in response to a request would be Structurally Impracticable or Technically Infeasible, the City will install or remediate the ramp to the extent not structurally impracticable, or to the maximum extent feasible.  Curb Ramp Requests shall be fulfilled in the order received, unless otherwise previously scheduled as part of planned capital improvement or street resurfacing projects.

5.5.    To assist the City in planning to respond to Curb Ramp Requests submitted throughout each calendar year of the Decree, prior to the beginning of that year, the City will budget the Curb Ramp Request program to install 150 Accessible Curb Ramps per year.  In the event the City receives insufficient requests in a given year, additional Accessible Curb Ramps will be installed under Section V.3 with the budgeted funds.  SDOT will institute a quarterly review of the Curb Ramp Requests in order to reprogram the funds to the installation of other Accessible Curb Ramps if insufficient requests are being received, and to determine whether increased funding should be allocated for installing more than 150 requested Accessible Curb Ramps in the following year.

(Proposed) CONSENT DECREE - 21
Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

5.6.    By no later than 30 days from the Effective Date, the City shall update its current website (http://www.seattle.gov/transportation/ada_request.htm) to describe the methods for making Curb Ramp Requests and the process and timeline for fulfilling those Requests.  The City shall also continue to provide outreach and education to the public about its efforts to comply with the ADA, including as outlined within the provisions of this Decree.

6.    **Maintenance**

6.1.    Throughout the Term of the Decree, the City shall maintain all Accessible Curb Ramps over which it has responsibility, ownership or control so that those facilities are readily accessible to and usable by persons with Mobility Disabilities, except for isolated or temporary interruptions in access due to maintenance or repairs.

6.2.    In circumstances where Accessible Curb Ramps are not available due to construction, maintenance or repairs, the City shall provide an accessible alternative route, which may be a Marginally Longer route, and shall identify that alternative route on signage at the subject location as well as on SDOT's website during the period of maintenance or repair.

7.    **Reporting and Monitoring**

7.1.    On an annual basis during the first quarter of each year of the Decree, the ADA Coordinator will report to the Parties, in writing, regarding the status of the City's compliance with the terms of the Decree.  As a component of its annual report, the City shall provide access to the following information, including remote access to the City's databases and data management programs, if applicable to the reporting period:  (a) a list that identifies the Accessible Curb Ramps that will be installed or remediated  pursuant to Section V.3-V.5 for the coming year, and those that were installed or remediated pursuant to Section V.3-V.5 during the past year, including a description of each curb ramp's location, direction of the curb ramp, the

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

20044 00011 gf26f2104e

party responsible for installing or remediating the curb ramp, and the priority or Curb Ramp Request that it addresses; (b) access to documentation detailing Structural Impracticality, Technical Infeasibility and maximum extent feasible determinations made with respect to ramps installed via New Construction or Alterations; (c) a description of all Curb Ramp Requests made the past year, their status of completion, and the status of any other Curb Ramp Requests from earlier years that are still pending; (d) access to photographs of all curb ramps that were installed or remediated over the previous year, including a photograph showing the running slope, and attached documentation identifying the cross slope, counter slope, width and length of the ramp, and amount of space at the top and lower landings; (e) photographs of all Curb Ramp locations that the City contends were subject to Structural Impracticability or Technical Infeasibility defenses; and (f) all complaints and grievances received by SDOT or the City ADA Coordinator related to curb ramps.

7.2.    Upon completion of the updates to the Hansen Database as set forth above in Section V.4, and thereafter in the first quarter of each year of the Decree, the City will provide Plaintiffs with access to the Hansen database and related mapping applications.  The Hansen database will identify all curb ramps that the City determined were subject to the Structural Impracticability or Technical Infeasibility defenses, and the reasons for those determinations.  Such documentation must include an image of the pre-installation permit stamped with City approval and documentation of post-installation on-site review by a trained SDOT inspector.  Additionally, the City shall ensure that Plaintiffs have access to the Hansen Database upon Plaintiffs' reasonable request throughout the term of the Decree.

7.3.    Throughout the Term of the Decree and if needed, Plaintiffs, on an annual basis, may request to meet with the City to discuss the City's efforts to implement the Decree

(Proposed) CONSENT DECREE - 23
Case No. 2:15-cv-01608-BJR
679981.5

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

and to attempt to resolve any disputes regarding its implementation or enforcement.  Such a meeting can concern any and all aspects of the Decree.

7.4.    Throughout the Term of the Decree, the Plaintiffs and their Counsel may conduct periodic inspections of the City's drawings and/or designs regarding Accessible Curb Ramps, and copies of such drawings and/or designs will be provided to Plaintiffs and their Counsel upon reasonable request.  Plaintiffs and their Counsel may also inspect work being done in the City's pedestrian rights of way to install Accessible Curb Ramps, or to remediate and repair non-Compliant Curb Ramps in order to monitor compliance with the Decree.  Any review by Plaintiffs and/or their Counsel shall be undertaken in a manner to assure it will not unreasonably interfere with the City's operations.

8.    **Outreach to Class Members**

Plaintiffs' Counsel and the City shall coordinate to provide information to Class Members regarding the scope and purpose of this Consent Decree, including information regarding the Curb Ramp Request System, Class Members' role in providing input into the Transition Plan on an ongoing basis, Class Members' input into the Accessible Route Planner, and notice of the settlement.

9.    **Dispute Resolution**

9.1.    **Meet and Confer Obligation**

If any Party believes that a dispute exists relating to any violation of or failure to perform any of the provisions of the Consent Decree ("Dispute"), it shall notify the other Party in writing and describe the alleged violation or failure to perform with particularity.  The Party alleged to have committed the violation or failure to perform shall provide a written response within fifteen (15) business days of receipt of such notice, and shall have a period of forty-five

(Proposed) CONSENT DECREE - 24
Case No. 2:15-cv-01608-BJR
679981.5

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

(45) days, from receipt of notice from the other Party that they have violated or failed to perform, to cure the alleged violation or failure to perform.  If the Party alleging a violation or failure to perform maintains that the violation or failure to perform has not been cured, the Parties shall meet and confer, in person or by telephone, and attempt to resolve the dispute on an informal basis for a period of no more than thirty (30) days following the expiration of the time to cure the alleged violation, unless the parties mutually agree to an extension.

### 9.2.    **Mediation Obligation**

If the Parties are unable to resolve a Dispute through the meet and confer process described in Section 9.1 above, the Parties shall mediate in an effort to resolve the matter.  The Parties shall have thirty (30) days to jointly select a mediator.  The mediation shall be conducted in the manner determined by the mediator, and the Parties shall engage in good faith efforts to resolve the Dispute through such mediation.

### 9.3.    **Decree Enforcement Following Mediation**

If the Parties are unable to resolve a Dispute regarding either Party's performance under the Consent Decree through the mediation process described in Section V.9.2 above, either Party may provide the other with written notice of its intent to enforce the Decree.  Thereafter, either Party may file a motion with the District Court to enforce the Decree.

### 9.4.    **Governing Law**

The terms of this Consent Decree shall be construed pursuant to the laws of the State of Washington with respect to principles of common law contract interpretation, and in accordance with the substantive law of ADA and Section 504, as applicable.

## VI.    **MONETARY RELIEF**

### 1.    **Named Plaintiff Payments**

(Proposed) CONSENT DECREE - 25
Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

In exchange for the Release of Claims set forth in Section VIII.1, below, and for all services they rendered to the Class, and conditioned upon the District Court granting Final Approval of this Consent Decree as well as Plaintiffs' application for service awards to the named Plaintiffs in the amounts set forth in this Section, within thirty (30) days of the Effective Date, the City will pay each Named Plaintiff $5,000. These payments shall be in full and final settlement of Named Plaintiffs' claims that are being released in Section VIII.1.

2.    **Attorneys' Fees, Expenses and Costs**

2.1    The City agrees that Plaintiffs are the prevailing parties entitled to recover reasonable attorneys' fees, expenses and costs for purposes of this petition, and the parties have negotiated in good faith the amount in payment of Plaintiffs' Counsel's reasonable attorneys' fees, costs and expenses in connection with this matter up to the Effective Date. Plaintiffs shall move or apply for the Court's approval of reasonable attorneys' fees, expenses, and costs in the amount of $1,400,000, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure. The City shall not oppose such motion or application. The City shall deliver payment in such agreed to amount within ten (10) business days of the Effective Date, conditioned upon this Court granting Final Approval of this Consent Decree and Plaintiffs' application for an award of attorneys' fees, expenses and costs.

2.2    The City shall pay Plaintiffs' Counsel reasonable attorneys' fees, expenses, and costs incurred between the Effective Date and the expiration date of the Consent Decree for performing all work reasonably necessary to monitor, implement, and administer the Decree, subject to the following amounts: for the first year ending December 31, 2018, up to a cap of $40,000; for the second year ending December 31, 2019, up to a cap of $40,000; for years 3 to 18 including January 1, 2020 through the end of the Compliance Period, up to a cap of

(Proposed) CONSENT DECREE - 26
Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

$20,000 per year.

2.3     By no later than January 15, 2019, and annually thereafter during the Term of the Decree, Plaintiffs' Counsel shall submit to the City a statement of reasonable attorneys' fees, expenses and costs incurred during the prior annual monitoring period for the work described above.  Each statement submitted to the City pursuant to this Agreement shall be supported by a description of services by date and by biller.

2.4     The City shall review each statement submitted, and shall pay those amounts it determines in good faith were reasonably incurred by Plaintiffs' Counsel up to the annual maximum, within 30 days of the date the City receives each such statement.  Any objections or disputes regarding the statement shall be handled pursuant to the Dispute Resolution procedure set forth in Section V.9, above.

2.5     Subject to the following terms, the City shall pay Plaintiffs' Counsel their reasonable attorneys' fees, expenses, and costs incurred between the Effective Date and the expiration date of the Consent Decree for performing all work reasonably necessary to resolve Disputes under Sections V.9.1 and V.9.2 of this Decree, subject to a cap of $50,000 per dispute. Should the Parties mediate a dispute, they shall evenly split any fees paid to the mediator. Plaintiffs' Counsel shall provide the City with a statement of reasonable attorneys' fees, expenses and costs incurred for each dispute, supported by a description of services by date and by biller.  The City shall review each statement and pay the amounts in compliance with Section VI.2.4 above.

2.6     In the event either Party finds that it is necessary to seek resolution of a dispute through a motion for enforcement before the District Court, the prevailing party shall be entitled to reasonable attorneys' fees, costs, and expenses in accordance with the standards of the

(Proposed) CONSENT DECREE - 27
Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

ADA and *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978).

## VII.    SETTLEMENT APPROVAL PROCESS

1.    **Court Approval**

This Consent Decree will be subject to approval by the District Court.  However, nothing in this Consent Decree will be deemed to authorize the District Court to change or modify any of its terms.  Any change, modification or rejection of any of the provisions of this Consent Decree by the District Court or any other court will constitute a material modification of this Consent Decree, will prevent the Judgment from becoming Final, and will give any Party the right to terminate this Consent Decree in its entirety.

2.    **Preliminary Approval by the District Court**

Within fifteen (15) days of circulating the fully executed Consent Decree, the Plaintiffs and the City will jointly submit a request to the District Court for Preliminary Approval of this Consent Decree, along with a request for an order from the District Court (substantially in the form attached to this Consent Decree as Exhibit "A") (the "Preliminary Approval Order"):  (i) preliminarily approving this Consent Decree; (ii) conditionally certifying the Settlement Class; (iii) appointing the Plaintiffs as class representatives for the Settlement Class; (iv) appointing Class Counsel to represent the Settlement Class; (v) directing notice to the Settlement Class as provided in this Consent Decree; (vi) setting forth procedures and deadlines for comments and objections as provided in this Consent Decree; (vii) scheduling a Fairness Hearing; and (viii) enjoining Settlement Class members from asserting or maintaining any claims to be released by this Consent Decree pending the Fairness Hearing.

3.    **Conditional Certification of the Settlement Class**

(Proposed) CONSENT DECREE - 28
Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

The Parties acknowledge and agree that the Court has certified a class in this case, and agree that the Settlement Class is materially identical to the class previously certified by the Court. The Parties further agree that the Settlement Class will be conditionally certified, in accordance with the terms of this Consent Decree, for purposes of effectuating the settlement embodied in this Consent Decree.

4. **No Opt-Out**

The Parties agree that the Settlement Class will be certified in accordance with the standards applicable under Rule 23(b)(2) of the Federal Rules of Civil Procedure and that, accordingly, no Settlement Class member may opt out of any of the provisions of this Consent Decree.

5. **Notice to the Settlement Class**

The Parties will jointly request approval by the District Court of notice to the Settlement Class as set forth in this Section VII.5. Following the District Court's issuance of the Preliminary Approval Order, the Parties will provide notice of the proposed Consent Decree, advising the members of the Settlement Class of the terms of the proposed Consent Decree and their right to object to the proposed Consent Decree. This notice will be published as follows:

5.1. Within thirty (30) days after the District Court has issued the Preliminary Approval Order, the City will cause notice of the settlement to be published for four (4) consecutive weeks in the following papers of general circulation: *The Seattle Times* in English, *El Mundo* in Spanish, *Seattle Chinese Post* in Chinese, and *Northwest Vietnamese News* in Vietnamese. Such notice will include the terms required by the District Court, which are anticipated to be as follows: (i) a brief statement of the *Reynoldson* Action, the settlement embodied in this Consent Decree, and the claims released by the Settlement Class; (ii) the date

(Proposed) CONSENT DECREE - 29
Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

and time of the Fairness Hearing and/or Final Approval Hearing of the proposed Consent Decree; (iii) the deadline for submitting objections to the proposed Consent Decree; and (iv) the web page, address, and telephone and fax numbers that may be used to obtain a copy of the Notice of Settlement (substantially in the form attached to this Consent Decree as Exhibit "B") in English, Spanish, Chinese and Vietnamese, or alternative accessible formats for individuals with visual impairments.  The City will pay the costs for the publication of the notice described in this Section VII.5.1.

5.2.    Within twenty (20) days after the District Court has issued the Preliminary Approval Order, the City will cause a copy of the Notice of Settlement to be posted and remain posted on the City's official website (www.seattle.gov) for four (4) consecutive weeks.  The website will also make a copy of the Notice of Settlement available in English, Spanish, Chinese and Vietnamese, and in an accessible electronic format that can be recognized and read by software commonly used by individuals with visual impairments to read web pages.  All pages or content on these websites that are part of the process for accessing the information in the Notice of Settlement will comply with WCAG.  The City will pay the costs for the publication of the notice described in this Section VII.5.2.

5.3.    Within ten (10) days after the District Court has issued the Preliminary Approval Order, the Class Counsel will cause a copy of the Notice of Settlement to be provided to the organizations listed on Exhibit "C" to this Consent Decree.

5.4.    Within twenty (20) days after the District Court has issued the Preliminary Approval Order, each firm making up Class Counsel will post on its website a copy of the Notice of Settlement in English, Spanish, Chinese and Vietnamese, and in an accessible electronic format that can be recognized and read by software commonly used by individuals with visual

(Proposed) CONSENT DECREE - 30
Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

impairments to read web pages. In addition, the websites will provide information about how Settlement Class Members may obtain a copy of the Consent Decree in English, Spanish, Chinese or Vietnamese. All pages or content on the websites that are part of the process for accessing the information in the notice will comply with WCAG.

6.  **Media Communications Regarding Settlement**

The Parties agree that after the full execution of this Consent Decree, they and their respective counsel may issue a press release and discuss the settlement set forth in this Consent Decree with the media but will use their best efforts to refrain from disparaging the other Parties or their counsel in connection with the settlement and the matters set forth in this Consent Decree.

7.  **Fairness Hearing**

The Parties will jointly request that the District Court schedule and conduct a Fairness Hearing to decide whether Final Approval of the Consent Decree will be granted. At the Fairness Hearing, the Parties will jointly move for entry of the Judgment (substantially in the form as attached to this Consent Decree as Exhibit "D"), providing for: (i) Final Approval of this Consent Decree as fair, adequate, and reasonable; (ii) final certification of the Settlement Class for settlement purposes only; (iii) final approval of the form and method of notice of the Judgment to the Settlement Class; (iv) final approval of the appointment of Class Counsel for the Settlement Class; (v) final approval of the appointment of Plaintiffs as class representatives of the Settlement Class; (vi) final approval of the release of the City from the Released Claims; (vii) final approval of an order that the Settlement Class members will be enjoined and barred from asserting any of the Released Claims against the City following entry of Judgment and up to and including the completion of the Term; (viii) the Parties and all members of the Settlement Class

(Proposed) CONSENT DECREE - 31
Case No. 2:15-cv-01608-BJR
679981.5

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

to be bound by the Judgment; and (ix) the District Court's retention of jurisdiction over the Parties to enforce the terms of the Judgment throughout the Term of this Consent Decree.

8.    **Objections to the Consent Decree**

Members of the Settlement Class will have an opportunity to object to the proposed Consent Decree but may not opt-out.  The Parties will request that the District Court order the following procedures for assertion of objections, if any, to the Consent Decree:

8.1.    Any Settlement Class member may object to this Consent Decree by filing, within forty-five (45) days of the commencement of the issuance of the notice to the Settlement Class required under Section VII.5, written objections with the District Court, with a copy of such objections served concurrently on Class Counsel by messenger delivery, FedEx or other overnight carrier delivery or by First Class U.S. Mail delivery and/or appearing at the Court's Fairness Hearing and speaking to the Court.

8.2.    With respect to any and all objections to this Consent Decree received by Class Counsel, Class Counsel will provide a copy of each objection to counsel of record for the City, by messenger delivery or electronic-mail delivery, within two (2) court days after receipt of such objection.

8.3.    Responses by Class Counsel and/or the City to any timely-filed objections will be filed with the District Court no less than five (5) days before the Fairness Hearing, or as otherwise ordered by the Court.

9.    **Additional Steps**

The Parties will take all procedural steps regarding the Fairness Hearing that may be requested by the District Court and will otherwise use their respective best efforts to consummate

(Proposed) CONSENT DECREE - 32
Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

the settlement embodied in this Consent Decree, and to obtain approval of this Consent Decree, and entry of the Judgment.

10.    **Final Approval**

10.1.    The Parties agree that, upon Final Approval the District Court will enter the Judgment under Rule 54(b) of the Federal Rules of Civil Procedure (substantially in the form attached to this Consent Decree as Exhibit "D") dismissing the *Reynoldson* Action with prejudice, subject to the District Court retaining jurisdiction to resolve any Dispute regarding compliance with this Consent Decree that cannot be resolved through the Dispute Resolution Process set forth in Section V, and to rule on Plaintiffs' motion for reasonable attorneys' fees and costs, as set forth in Section VI.2.

10.2.    The City will not assert, after the Judgment has become Final, that the District Court lacks jurisdiction to enforce the terms of this Consent Decree, or raise any jurisdictional defense to any enforcement proceedings permitted under the terms of this Consent Decree.

10.3.    Should the District Court deny the Parties' request to enter the Judgment, should this Consent Decree not receive Final Approval by the District Court for any reason, or should this Consent Decree not become Final for any reason in accordance with its terms:  (i) this Consent Decree will be null and void and of no force and effect; (ii) nothing in this Consent Decree will be deemed to prejudice the position of any of the Parties with respect to any matter; and (iii) neither the existence of this Consent Decree, nor its contents, will be admissible in evidence, referred to for any purpose in any litigation or proceeding, or be deemed an admission by the City of any fault, wrongdoing or liability.

10.4.    **Effect of Final Approval Order.**

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

This Consent Decree, upon Final Approval, will be binding upon the City, Plaintiffs, and all Settlement Class members and, to the extent specifically set forth in this Consent Decree, upon Class Counsel; will extinguish all Released Claims and will constitute the final and complete resolution of all issues addressed herein. This Consent Decree is the complete and final disposition and settlement of any and all Released Claims, as detailed in Section VIII.

## VIII.   RELEASE OF CLAIMS

1.     **Release of Claims for Equitable, Non-Monetary Relief**

Effective upon entry of judgment on Final Approval of the Consent Decree by the District Court and in consideration for the City's commitments set forth in the Decree, each of the Plaintiffs and Class Members, on behalf of themselves and their respective heirs, assigns, successors, executors, administrators, agents, and representatives, ("Releasing Parties") will, upon the Effective Date, fully and finally release, acquit and discharge the City from any and all claims, allegations, demands, charges, complaints, actions, lawsuits, rights, liabilities, losses, injuries, obligations, disputes and causes of action of any kind, and whether known or unknown, suspected or unsuspected, asserted or unasserted, or actual or contingent, for injunctive, declaratory, or other non-monetary relief, however described, that were brought, could have been brought, or could be brought now or in the future by the Releasing Parties relating to or arising from any of the City's alleged actions, omissions, incidents, or conduct related to the installation, remediation, repair or maintenance of curb ramps in the City's pedestrian right of way at any time prior to the Effective Date and through the end of the Compliance Period (the "Released Claims"). Such Released Claims, however, shall not include any claims to enforce the terms of the Consent Decree, any claims for relief arising from the City's violation of any term of the Consent Decree, or any claims related to monetary damages, personal injuries, or

(Proposed) CONSENT DECREE - 34
Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

property damage except as set forth in Section VIII.2 below.  Such Released Claims also shall

not include any claims based on or arising from missing or non-Complaint curb ramps that

remain in existence after the expiration of the Term of the Decree.

2.    **Release of Claims Excludes Sidewalks**

The releases set forth in this Consent Decree only cover curb ramps on the City's street segments

with Pedestrian Walkways and do not apply to components of the City's sidewalk system other

than curb ramps.  Plaintiffs and the Settlement Class do not release any claims relating to

components of the City's sidewalk system other than curb ramps.

3.    **Release of Named Plaintiffs' Damages Claims**

In addition to the Released Claims set forth in Section VIII.1, the Named Plaintiffs also

release the City from any and all claims arising at any time prior to the Effective Date for

monetary relief relating to or arising from any of the City's alleged actions, omissions, incidents,

or conduct related to the installation, remediation, repair or maintenance of curb ramps in the

City's pedestrian right of way.

## IX. NOTICES PURSUANT TO DECREE

All notices, demands, or other communications to be provided pursuant to this Consent

Decree shall be in writing and delivered by registered or overnight mail to the following persons

and addresses (or such other persons and addresses as any Party may designate in writing from

time to time):

For the City:

Lorraine Lewis Phillips
Seattle City Attorney's Office
701 5th Avenue, #2050
Seattle, WA 98104
(206) 684-8200

(Proposed) CONSENT DECREE - 35
Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

Paul J. Lawrence
Kymberly K. Evanson
Pacifica Law Group LLP
1191 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 245-1700


For the Plaintiffs:

Emily Cooper
Staff Attorney
Disability Rights Washington
315 5th Avenue South
Suite 850
Seattle, WA 98104
(206) 324-1521

Linda M. Dardarian
Goldstein, Borgen, Dardarian & Ho
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
(510) 763-9800

Timothy P. Fox
Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
(303) 757-7901

## X.  MISCELLANEOUS PROVISIONS

1.      **Authority**

Each of the Parties represents, warrants, and agrees that he, she or it has the full right and

authority to enter into this Consent Decree, and that the person executing this Decree has the full

right and authority to commit and bind such Party.

2.      **Execution by Facsimile and in Counterparts**

This Consent Decree may be executed by the Parties in separate counterparts, and all

such counterparts taken together shall be deemed to constitute one and the same agreement.

(Proposed) CONSENT DECREE - 36
Case No. 2:15-cv-01608-BJR
679981.5

20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

1    IN WITNESS WHEREOF, the Parties hereto have approved and executed this Consent

2    Decree on the dates set forth opposite their respective signatures.

3    EXECUTED by the Parties as follows:

4

5

6    DATED: _____, 2017    THE CITY OF SEATTLE

7                                        PETER S. HOLMES
                                        Seattle City Attorney

8
                        By:    _____
9                                    Lorraine Lewis Phillips
                                    Assistant City Attorney
10

11

12    DATED: __6/27__, 2017    By: _____
13                                    Conrad Reynoldson, individually and as a
                                    representative of the Class
14

15    DATED: _June 27_, 2017    By: _____
16                                    Stuart Pixley, individually and as a
                                    representative of the Class
17

18    DATED: __6/27__, 2017    By: _____
                                    David Whedbee, individually and as a
19                                    representative of the Class

20

21

22

23

24

25

26

27

(Proposed) CONSENT DECREE - 37
Case No. 2:15-cv-01608-BJR
679981.5

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

20044 00011 gf26f2104e

1    IN WITNESS WHEREOF, the Parties hereto have approved and executed this Consent

2  Decree on the dates set forth opposite their respective signatures.

3    EXECUTED by the Parties as follows:

4

5  DATED: June 27, 2017    THE CITY OF SEATTLE

6

7                                   PETER S. HOLMES
                                    Seattle City Attorney

8                          By:    _Lorraine Lewis Phillips_

9                                 Lorraine Lewis Phillips
                                  Assistant City Attorney

10

11

12  DATED: _____, 2017    By: _____

13                                   Conrad Reynoldson, individually and as a
                                     representative of the Class

14

15  DATED: _____, 2017    By: _____

16                                   Stuart Pixley, individually and as a
                                     representative of the Class

17

18  DATED: _____, 2017    By: _____

19                                   David Whedbee, individually and as a
                                     representative of the Class

20

21

22

23

24

25

26

27

(Proposed) CONSENT DECREE - 37
Case No. 2:15-cv-01608-BJR
679981.5

    20044 00011 gf26f2104e

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

1    **APPROVED AS TO FORM:**

2    DATED: July 12, 2017          PACIFICA LAW GROUP LLP

3

4

5                                  By: _____
                                        Paul J. Lawrence
6

7                                  Attorneys for the City of Seattle

8    DATED: _____, 2017     DISABILITY RIGHTS WASHINGTON

9

10

11                                 By: _____
                                        Emily Cooper
12

13                                 Attorneys for Plaintiffs/Class

14

15   DATED: June 27, 2017          CIVIL RIGHTS EDUCATION AND
                                    ENFORCEMENT CENTER
16

17                                 By: _____
                                        Timothy Fox
18

19                                 Attorneys for Plaintiffs/Class

20

21   DATED: June 23, 2017          GOLDSTEIN BORGEN DARDARIAN & HO

22

23

24                                 By: _____
                                        Linda M. Dardarian
25

26                                 Attorneys for Plaintiffs/Class

27

(Proposed) CONSENT DECREE - 38
Case No. 2:15-cv-01608-BJR
679981.5

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

**EXHIBIT A**

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

WESTERN DISTRICT OF WASHINGTON

10
11

| | |
|---|---|
| CONRAD REYNOLDSON, STUART PIXLEY, and DAVID WHEDBEE, on behalf of themselves and all others similarly situated, | Case No. : 2:15-cv-01608-BJR |
| | CLASS ACTION |
| Plaintiffs, | [PROPOSED] ORDER (1) GRANTING PRELIMINARY APPROVAL OF SETTLEMENT; (2) GRANTING CERTIFICATION OF SETTLEMENT CLASS; (3) DIRECTING NOTICE TO THE CLASS; AND (4) SETTING DATE FOR FAIRNESS HEARING |
| v. | |
| CITY OF SEATTLE, a public entity, | |
| Defendant. | |

12
13
14
15
16
17
18
19

**ORDER**

20

    The Parties have applied to the Court for an order preliminarily approving the settlement

21

of this action in accord with the Proposed Consent ("Decree"), which sets forth the terms and

22

conditions of a proposed settlement and dismissal of the action with prejudice, with the Court

23

retaining jurisdiction to enforce the Decree throughout its term. Having read the papers submitted

24

and carefully considered the arguments and relevant legal authority, and good cause appearing,

25

the Court GRANTS the Parties' Joint Motion for Preliminary Approval of Class Action

26

Settlement.

27
28

- 1 -

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. On May 2, 2016, this Court granted the Parties' Stipulated Motion for Class Certification, certifying a class for declaratory and injunctive relief. The Settlement Class definition in the Decree is identical to that of the certified Class and therefore does not expand the class membership or legal claims that this Court has previously certified. It is therefore appropriate for class certification under Rules 23(a) and (b)(2). The Court finds, for purposes of settlement only, and conditioned upon the entry of this Order and the Final Judgment and Order Approving Settlement, that the requirements of Rule 23 of the Federal Rules of Civil Procedure are met by the Settlement Class: (a) joinder of all Settlement Class Members in a single proceeding would be impracticable, if not impossible, because of their numbers and dispersion; (b) there are questions of law and fact common to the Settlement Class; (c) Plaintiffs' claims are typical of the claims of the Settlement Class that they seek to represent for purposes of settlement; (d) Plaintiffs have fairly and adequately represented the interests of the Settlement Class and will continue to do so; (e) Plaintiffs and the Settlement Class are represented by qualified, reputable counsel who are experienced in preparing and prosecuting class actions, including those involving the sort of practices alleged in the Complaint; and (f) the City acted or refused to act on grounds that apply to the Settlement Class, so that final declaratory and injunctive relief is appropriate to the Settlement Class. Accordingly, the Court hereby certifies the proposed settlement class pursuant to Federal Rules of Civil Procedure 23(b)(2), and appoints named Plaintiffs and their counsel as representatives of the Settlement Class.

2. The Court hereby preliminarily approves the Decree. The Court finds on a preliminary basis that the Decree is fair, adequate and reasonable to all potential Class Members. It further appears that extensive evaluation of the merits has been conducted such that Counsel for the Parties are able to reasonably evaluate their respective positions. It also appears to the Court

20044 00011 gf265j10xw
670535.1

that settlement at this time will avoid substantial additional costs to all Parties, as well as avoid the delay and the risks presented by further prosecution of issues either in the current or separate litigation proceedings which are addressed by the Decree. It further appears that the Decree has been reached as the result of good faith, prolonged, serious, and non-collusive arms-length negotiations, including several mediation sessions supervised by mediator Teresa A. Wakeen.

3.      The Court hereby approves, as to form and content, the proposed Notice, attached as Exhibit B to the Decree.  The Court finds that the distribution of the Notice in the manner and form set forth in the Decree meets the requirements of due process and Federal Rules of Civil Procedure 23(c)(2) and 23(e). This Notice is the best practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto. The Parties shall submit declarations to the Court as part of their Motion for Final Approval of the Class Action Settlement confirming compliance with the notice provisions of the Decree.

4.      A hearing on final approval of the Decree ("Fairness Hearing") shall be held before the Court on a date to be set by the Court to determine all necessary matters concerning the Decree, including whether the proposed Decree's terms and conditions are fair, adequate, and reasonable, and whether the Decree should receive final approval by the Court, as well as to rule on Class Counsel's motion requesting an award of reasonable attorneys' fees, costs and expenses.

5.      Objections by Class Members may be submitted to Class Counsel no later than forty-five (45) calendar days after notice by newspaper publication has begun. Any Settlement Class Member may object to any aspect of the proposed Decree either on his or her own or through an attorney hired at his or her expense. Any Settlement Class Member who wishes to object to the proposed Decree may serve on Class Counsel a written statement of objection no later than forty-five (45) calendar days after notice by newspaper publication has begun (the "Objection Deadline"). Such statement should include: (a) the name, address, and, if available,

telephone number and e-mail address of the Class Member objecting and, if represented by counsel, of his or her counsel; (b) a statement of the Class Member's objections; and (c) a statement of his or her membership in the Settlement Class.

6.    Any Class Member who wishes to object to the proposed Decree may also present objections at the Fairness Hearing.

7.    The procedures and requirements for filing objections in connection with the Fairness Hearing are intended to ensure the efficient administration of justice and the orderly presentation of any Settlement Class Members' objection to the Decree, in accordance with the due process rights of all Settlement Class Members.

8.    Class Counsel shall provide copies of any objections to Defendant's counsel within two (2) court days of receipt. Class Counsel shall also file any objections with the Court no less than ten (10) days before the Fairness Hearing.

9.    Pending the Fairness Hearing, all proceedings in this Action, other than proceedings necessary to carry out and enforce the terms and conditions of the Decree and this Order, are hereby stayed.  Additionally, the Court enjoins all Settlement Class Members from asserting or maintaining any claims to be released by the Decree until the date of the Fairness Hearing.

10.    In accordance with the above, the Court adopts the following schedule:

    a.    Within ten (10) days after entry of the Order Granting Preliminary Approval, Notice in the form of Exhibit B to the Decree shall be mailed via U.S. mail and/or email to all organizations identified on Exhibit C to the Decree.

    b.    Within twenty (20) days after entry of the Order Granting Preliminary Approval, Notice in the form of Exhibit B to the Decree shall be posted on

- 4 -

20044 00011 gf265j10xw
670535.1

a case-specific website established by Class Counsel, and the City of Seattle's official website, and shall remain posted for four (4) consecutive weeks.

c.     Commencing within thirty (30) days after entry of the Order Granting Preliminary Approval, Notice in the form of Exhibit B to the proposed Decree shall be published in the *The Seattle Times* in English, *El Mundo* in Spanish, *Seattle Chinese Post* in Chinese, and *Northwest Vietnamese News* in Vietnamese, for four (4) consecutive weeks.

d.     Each Class Member shall be given a full opportunity to object to the proposed Settlement and Class Counsel's request for an award of reasonable attorneys' fees, expenses, and costs, and to participate at the Fairness Hearing. Any Class Member seeking to object to the proposed Settlement may submit an objection to Class Counsel in writing, via regular or electronic mail, or by leaving a message with their objection via telephone, TTY and/or Video Relay Service on any toll free number established by Class Counsel, or may appear at the Fairness Hearing to make the objection, as set forth hereinabove.

e.     Fourteen (14) days prior to the objection deadline, Plaintiffs shall file a Motion for an Award of Reasonable Attorneys' Fees, Expenses, and Costs. The hearing on that Motion shall be concurrent with the Fairness Hearing.

f.     The Parties shall file a Joint Motion for Final Approval and respond to objections, if any, no later than five (5) days prior to the Fairness Hearing. All parties shall file statements of compliance with notice requirements.

g.     The Fairness hearing shall be held on _____, 2017 at _____

- 5 -

1    o'clock in Courtroom 16106, of the above-referenced Court.

2    10.    In the event the Court does not grant final approval of the Settlement, or for any

3    reason the Parties fail to obtain a Final Judgment and Order Approving Settlement as

4    contemplated by the Decree, or the Decree is terminated pursuant to its terms for any reason or

5    the Effective Date does not occur for any reason, then the Decree and all orders and findings

6    entered in connection with the Decree and the Settlement shall become null and void and be of no

7    further force and effect whatsoever, shall not be used or referred to for any purpose whatsoever,

8    and shall not be admissible or discoverable in this or any other proceeding.

9    This Order shall not be construed or used as an admission, concession, or declaration by

10    or against the City of any fault, wrongdoing, breach, or liability.  It shall not be deemed to be a

11    stipulation as to the propriety of class certification, or any admission of fact or law regarding any

12    request for class certification, in any other action or proceeding, whether or not involving the

13    same or similar claims.

14    Nor shall this Order be construed or used as an admission, concession, or declaration by or

15    against Plaintiffs or the other Settlement Class Members that their claims lack merit or that the

16    relief requested is inappropriate, improper, or unavailable, or as a waiver by any Party of any

17    defenses or claims he, she, or it may have in the Action or in any other proceeding.

18    **IT IS SO ORDERED.**

19    Dated: _____          _____

20                                              HON. BARBARA J. ROTHSTEIN
21                                              United States District Judge

CASE NO: 2:15-CV-01608-BJR
[PROPOSED] ORDER RE APPROVAL OF
SETTLEMENT

20044 00011.gf265j10xw
670535.1

# **EXHIBIT B**

## NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION LAWSUIT

ATTENTION: ALL PERSONS WITH A MOBILITY DISABILITY: If you have used, or attempted to use, Seattle sidewalks or other pedestrian rights-of-way and have encountered corners that were missing curb ramps, or curb ramps that were damaged, in need of repair, or otherwise in a condition not suitable or sufficient for use ("Deficient Curb Ramps"), or if you believe that you may encounter Deficient Curb Ramps in the future, you may be a member of the proposed Settlement Class affected by this lawsuit. This is a court-authorized notice.

A "Mobility Disability" means any impairment or medical condition that limits a person's ability to walk, ambulate, or maneuver around objects, or to ascend or descend steps or slopes. A person with a Mobility Disability may or may not use a wheelchair, scooter, electric personal assisted mobility device, crutches, walker, cane, brace, orthopedic device, or similar equipment or device to assist her or his navigation along sidewalks, or may be semi-ambulatory.

PLEASE READ THIS NOTICE CAREFULLY. YOUR RIGHTS MAY
BE AFFECTED BY LEGAL PROCEEDINGS IN THIS CASE.

## NOTICE OF CLASS ACTION

The purpose of this notice is to inform you of a proposed settlement in a pending class action lawsuit brought on behalf of persons with Mobility Disabilities against the City of Seattle. The class action settlement ("Settlement Agreement"), which must be approved by the United States District Court, was reached in the case entitled *Reynoldson, et al. v. City of Seattle,* No. 2:15-cv-01608-BJR, pending in the United States District Court for the Western District of Washington.

## BASIC INFORMATION

Filed in 2015, this lawsuit alleges that the City of Seattle ("City") violated federal and state disability access laws by allegedly failing to ensure that its pedestrian rights-of-way contain curb ramps that are necessary to make its pedestrian rights-of-way accessible to individuals with Mobility Disabilities. The City denies these allegations and disputes that it has any liability or committed any wrongdoing.

This is a class action. In a class action, one or more people or organizations, called Class Representatives (in this case Conrad Reynoldson, Stuart Pixley, and David Whedbee ["Plaintiffs"]), sue on behalf of people who have similar legal claims. All of these people are a Class or Class Members. One court resolves the issues for all Class Members. United States District Court Judge Barbara Jacobs Rothstein is in charge of this class action.

The Court did not decide in favor of either Plaintiffs or the City in this case. Instead, both sides agreed to a settlement. That way, they avoid the cost, delay, and uncertainty of a trial, and settlement benefits go to the Class Members. The Class Representatives and Class Counsel (the attorneys appointed by the Court to represent the Class) think the proposed settlement is in the best interests of the Class Members, taking into account the benefits of the settlement, the risks of continued litigation, and the delay in obtaining relief for the Class if the litigation continues.

## THE SETTLEMENT CLASS

The Settlement Class includes all persons (including, without limitation, residents of and visitors to the City) with any Mobility Disability, who have been denied, or may in the future be denied, full and equal access to the City's pedestrian rights-of-way due to Deficient Curb Ramps.

## SUMMARY OF THE PROPOSED SETTLEMENT AGREEMENT

**The following is a summary of certain provisions of the Settlement Agreement. The complete Settlement Agreement is available as set forth below.**

The Settlement Agreement (which is called a "proposed Consent Decree") requires the City of Seattle to make widespread accessibility improvements by installing, repairing, and remediating Deficient Curb Ramps, beginning July 1, 2017, and continuing for the next 18 years.

The Agreement commits the City to install or remediate 1250 ramps per year on average (the "Annual Commitment"). The Annual Commitment includes ramps built by third parties such as utilities, other public entities, and private developers. The Agreement also ensures that all new construction and alterations undertaken by the City (or by any third-party acting on the City's authority or behalf) comply with federal and Washington state law, and requires the City to use its best efforts to ensure that all third-party construction, alteration, and development projects comply with state and federal law regarding the installation, repair, and remediation of curb ramps. The Agreement also requires the City to maintain all accessible curb ramps over which it has responsibility, ownership, or control so that those curb ramps are readily accessible to and usable by persons with Mobility Disabilities, except for isolated or temporary interruptions in access due to maintenance or repairs.

The Agreement provides that the City will create a Transition Plan that identifies, at least one year in advance, specific projects and specific curb ramps to be installed, repaired, and remediated in fulfillment of the Annual Commitment. The Transition Plan will be consistent with priorities set forth in regulations promulgated under the Americans with Disabilities Act, and will also incorporate input from Class Members and government agencies.

The City has surveyed much of its pedestrian rights-of-way with respect to existing curb ramps, and the Agreement requires the City to conduct a virtual review to determine whether curb ramps exist in the portions of the pedestrian rights-of-way that have not been surveyed, and to take measurements of those ramps found to exist during the virtual review, to determine whether they comply with the curb ramp requirements of federal and Washington state law.

The Agreement also commits the City to continue to maintain a system through which people with disabilities may submit requests for installation, remediation, and maintenance of accessible curb ramps, and subject to limited and specified exceptions, to use its best efforts to remediate or install each requested accessible curb ramp within 12 months of the request.

The Seattle Department of Transportation also will employ an Americans with Disabilities Act Coordinator to assist in developing and implementing the work required by the Agreement.

The Agreement also includes provisions for the Class Representatives and Class Counsel (identified below) to monitor the City's compliance with the terms of the Agreement.

675353.2

20044 00011 gf265q105c

## RELEASE OF CLAIMS

The Settlement Agreement resolves and releases through the 18-year term of the Settlement Agreement, all claims for injunctive, declaratory, or other non-monetary relief that were brought, could have been brought, or could be brought in the future relating to or arising from any of the City's alleged actions, omissions, incidents, or conduct related to the installation, remediation, repair, or maintenance of curb ramps in the City's pedestrian rights-of-way. The Settlement Agreement does not provide for any monetary relief to the Settlement Class, and it does not release any damages claims that Settlement Class members may have.

## REASONABLE ATTORNEYS' FEES, COSTS AND EXPENSES

The settlement class is represented by Goldstein, Borgen, Dardarian & Ho, the Civil Rights Education and Enforcement Center, and Disability Rights Washington ("Class Counsel"). The City will pay Class Counsel their reasonable attorneys' fees, expenses, and costs of $1.4 million, subject to the approval by the Court. Class Counsel shall also be entitled to reasonable attorneys' fees and costs for monitoring the City's compliance with the Settlement Agreement as set forth in the Settlement Agreement, capped at $40,000 for each of the years ending December 31, 2018, and December 31, 2019, and up to a cap of $20,000 per year for the remainder of the Agreement. Class Counsel will be paid attorneys' fees, costs and expenses that the Court approves as fair and reasonable.

## FAIRNESS OF SETTLEMENT

The Class Representatives and Class Counsel have concluded that the terms and conditions of the proposed Settlement Agreement are fair, reasonable, adequate, and in the best interests of the Settlement Class. In reaching this conclusion, the Class Representatives and Class Counsel have considered the benefits of the settlement, the possible outcomes of continued litigation of these issues, the expense and length of continued litigation, and actual and possible appeals.

## THE COURT'S FINAL APPROVAL/FAIRNESS HEARING

The Court has preliminarily approved the Settlement Agreement, and has scheduled a hearing for [insert date, time, and location] to decide whether the proposed settlement is fair, reasonable, and adequate, and should be finally approved. Although you are not required to attend, as a Settlement Class Member, you have the right to attend and be heard at this hearing, as specified in the next section below. At the hearing, the Court will consider any objections to the settlement. Judge Rothstein will listen to people who have asked to speak at the hearing. After the hearing, the Court will decide whether to approve the settlement. The Court will also consider the agreed upon amount to award Class Counsel as reasonable attorneys' fees, costs and litigation expenses. We do not know how long this decision will take.

This hearing date is subject to change without further notice. If you wish to be informed of any changes to the schedule, please notify Class Counsel at the addresses listed in the next section below. You may also check www.creeclaw.org/Seattlecubrampsettlement or the public court records on file in this action at https://www.pacer.gov/ for any updates.

## OBJECTIONS TO THE SETTLEMENT

Any Settlement Class Member may object to the terms of the proposed settlement described above by submitting a written or oral objection to Class Counsel via regular or electronic mail, or by leaving a message with their objection via telephone or Video Relay Service. If you submit an objection, you do not have to come to the Final Approval Hearing to talk about it. If you plan on speaking at the Final Approval Hearing, please indicate in your objection that you plan to do so. If you do not submit an objection prior to the deadline, you may not be provided an opportunity to speak to the District Court about your objection at the Final Approval Hearing.

If you submit an objection, it should include the following information: (a) your name, address, and, if available, your telephone number and e-mail address; (b) if you are being represented by counsel, the name, address, telephone number and e-mail address of your attorney; (c) a statement of your objections; and (d) a statement of whether you are a member of the Settlement Class.

Please note that the Court can only approve or deny the settlement. The Court cannot change the settlement's terms.

**All objections must be submitted or postmarked on or before [date].**

All email objections must be sent to the following email address: **curbramps@creeclaw.org**

All oral objections must be made by leaving a message at the following toll-free number: 1-888-461-9191. For TTY, please call 711 and ask for Emily Cooper at Disability Rights Washington.

All regular mail objections must be sent to the following address:

Timothy P. Fox
Civil Rights Education and
Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203

You may, but are not required to, appear at the Final Approval Hearing scheduled for [insert date, time, and location] to have your objection heard by the Court.

**Any Class Member who does not object at or before the Final Approval Hearing will be deemed to have approved the Settlement and to have waived such objections and shall not be able to make any objections (by appeal or otherwise) to the Settlement.**

**IF YOU DO NOT OPPOSE THIS SETTLEMENT, YOU NEED NOT APPEAR OR FILE ANYTHING IN WRITING.**

**BINDING EFFECT**

The proposed Settlement Agreement, if given final approval by the Court, will bind all members of the Settlement Class. This will bar any person who is a member of the Settlement Class from prosecuting or maintaining any claim or action released under the terms of the Settlement Agreement.

**FURTHER INFORMATION**

The terms of the settlement are only summarized in this notice. For the precise and full terms and conditions of the settlement, please see the Settlement Agreement available at www.creeclaw.org/Seattlecubrampsettlement or by accessing the Court docket on this case through the Court's Public Access to Electronic Records (PACER) system at https://www.pacer.gov/, or by visiting the office of the Clerk of the Court for the United States District Court for the Western District of Washington, 700 Stewart Street, Suite 2310, Seattle, WA 98101, between 9:00 a.m. and 4:30 p.m., Monday through Friday, excluding Court holidays.

You can also obtain more detailed information about the settlement or a copy of the Settlement Agreement from Class Counsel at any of the following addresses:

Linda M. Dardarian
Goldstein, Borgen, Dardarian & Ho
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
(510) 763-9800
www.gbdhlegal.com

Timothy P. Fox
Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
(303) 757-7901
www.creeclaw.org

Emily Cooper
Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, WA 98104
(206) 324-1521
www.disabilityrightswa.org

Class Members may also contact Class Counsel at the following toll-free number, 1-888-461-9191to obtain further information about the settlement or settlement documents.  For TTY, please call 711 and ask for Emily Cooper at Disability Rights Washington.

Please do not direct questions to the District Court.

To obtain copies of this Notice or the Consent Decree in alternative accessible formats, please contact Class Counsel listed above.

# EXHIBIT C

1.      Alliance of People with Disabilities
2.      Washington State Independent Living Council
3.      Feet First
4.      Seattle Commission for People with disAbilities
5.      University of Washington's D Center
6.      University of Washington's DO-IT
7.      Seattle University's Disability Studies
8.      Northwest Regional Spinal Cord System
9.      Young Adult Stroke Survivors
10.     Seattle Brainworks
11.     Paralyzed Veterans of America
12.     Brain Injury Association of Washington
13.     Seattle Chapter of the MS Society
14.     Deaf Blind Service Center
15.     WA Chapter of the National Federation of the Blind
16.     WA Chapter of the American Council of the Blind
17.     Karen Braitmayer
18.     Lighthouse for the Blind
19.     Northwest Universal Design Council
20.     Age-Friendly Seattle
21.     Northwest ADA Center

**EXHIBIT D**

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

WESTERN DISTRICT OF WASHINGTON

10

11
12
13

14

15

16

CONRAD REYNOLDSON, STUART
PIXLEY, and DAVID WHEDBEE, on behalf
of themselves and all others similarly situated,

Plaintiffs,

v.

CITY OF SEATTLE, a public entity,

Defendant.

Case No.  2:15-cv-01608-BJR

**[PROPOSED] FINAL JUDGMENT AND
ORDER APPROVING CLASS ACTION
SETTLEMENT**

17

18        WHEREAS, on _____, 2017, the Court (the Honorable Barbara J.

19   Rothstein presiding) held a hearing (the "Fairness Hearing") to determine, among other things,

20   whether the Settlement in this action by Defendant City of Seattle ("the City") and Plaintiffs

21   Conrad Reynoldson, Stuart Pixley, and David Whedbee, as set forth in the Consent Decree, a

22   copy of which is attached hereto as Exhibit 1 (the "Consent Decree"), is fair, reasonable and

23   adequate, such that an Order of final approval should be issued and a final judgment upon said

24   Consent Decree should be entered by the Court,

25        WHEREAS, the Fairness Hearing was attended by the Parties, through their respective

26   counsel of record in this action, and by such other individuals and entities as set forth in the

27   record in this matter, and

28

CASE NO:  2:15-CV-01608-BJR
[PROPOSED] JUDGMENT APPROVING CLASS
ACTION SETTLEMENT

20044 00011 gf265k10fj
670913.1

1    WHEREAS, the Court has issued its Order giving final approval to the Parties' Settlement
2    set forth in the Consent Decree after the Fairness Hearing,
3    NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS
4    FOLLOWS:
5    1.    The Court, for the purposes of this Judgment, adopts the terms and definitions set
6    forth in the Consent Decree.
7    2.    The Court has jurisdiction over the subject matter of this action, the Plaintiffs, the
8    Settlement Class, the Consent Decree, and the City.
9    3.    The Court finds that the notice to the Settlement Class of the pendency of this
10   action and of the proposed Settlement was disseminated by each of the means required under the
11   Consent Decree and the Order of this Court dated _____, 2017, and was otherwise fully
12   implemented.
13   4.    The Court finds that such notice to the Settlement Class, as ordered and
14   implemented, was reasonably calculated under the circumstances to apprise the Settlement Class
15   Members of the pendency of this action, all material elements of the proposed Settlement, and
16   their opportunity (a) to submit written objections to or comments on the Settlement, and (b) to
17   appear at the Fairness Hearing to object to or comment on the Settlement.  The Notice of
18   Settlement was reasonable and the best notice practicable to all Settlement Class Members and
19   complied with the Federal Rules of Civil Procedure, due process, and all other applicable laws
20   and rules.  A full and fair opportunity has been afforded to the members of the Settlement Class to
21   participate during the Fairness Hearing, and all other persons wishing to be heard have been
22   heard.  Accordingly, the Court determines that all members of the Settlement Class, as set forth
23   below, are bound by this Judgment.
24   5.    On _____, 2017, this Court provisionally certified the following
25   Settlement Class, as defined in the Consent Decree: "All persons (including residents of and/or
26   visitors to the City of Seattle) with any mobility disability, who, at any time prior to judgment in
27   this action and/or through the Term of this Consent Decree, have been denied full and equal
28   access to the City of Seattle's pedestrian right of way due to the lack of a curb ramp or a curb

ramp that was damaged, in need of repair, or otherwise in a condition not suitable or sufficient for use." *See* Consent Decree, pg. 9.

6.     On _____ 2017, this Court appointed Plaintiffs Conrad Reynoldson, Stuart Pixley, and David Whedbee as class representatives of the Settlement Class, and appointed the following counsel as Class Counsel to represent the Settlement Class: (i) Goldstein Borgen Dardarian & Ho; (ii) Civil Rights Education and Enforcement Center; and (iii) Disability Rights Washington.

7.     On _____, 2017, this Court provisionally certified the Settlement Class based on the findings in the Order of the same date, as well as the findings in the Court's May 2, 2016 Order certifying this case as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.  This Court finds that the Settlement Class continues to meet the requirements for class certification under the Federal Rules of Civil Procedure and all other applicable laws and rules.

8.     In particular, the Court finds that: (a) joinder of all Settlement Class Members in a single proceeding would be impracticable, if not impossible, because of their numbers and dispersion; (b) there are questions of law and fact common to the Settlement Class; (c) Plaintiffs' claims are typical of the claims of the Settlement Class that they seek to represent for purposes of settlement; (d) Plaintiffs have fairly and adequately represented the interests of the Settlement Class and will continue to do so; (e) Plaintiffs and the Settlement Class are represented by qualified, reputable counsel who are experienced in preparing and prosecuting class actions, including those involving the sort of practices alleged in the Complaint; and (f) the City acted or refused to act on grounds that apply to the Settlement Class, so that final declaratory and injunctive relief is appropriate to the Settlement Class.

9.     Class certification is therefore an appropriate method for protecting the interests of the Settlement Class and resolving the common issues of fact and law arising out of the Plaintiffs' claims while also eliminating the risk of duplicative litigation.  Accordingly, the Court hereby makes final its earlier provisional certification of the Settlement Class and further confirms the appointment of the Class Representatives and Class Counsel to represent the Settlement Class, as

20044 00011 gf265k10fj
670913.1

1    set forth above.

2        10.    The Court grants final approval of the Settlement set forth in the Consent Decree

3    and finds that it is fair, reasonable, adequate, and in the best interests of the Settlement Class as a

4    whole.  The Court further finds that the City's Annual Commitment, which requires the

5    construction of 22,500 curb ramps over the course of 18 years, as set forth in Section V.3.1 of the

6    Consent Decree is proper and reasonably calculated based on the available information to

7    maintain and ensure accessibility of the pedestrian right of way located in the City of Seattle to

8    persons with Mobility Disabilities.  Accordingly, the Settlement shall be consummated in

9    accordance with the terms and conditions of the Consent Decree.

10        11.    Objections to the Settlement are overruled for the reasons explained in the Court's

11    accompanying findings.

12        12.    The Class Representatives and all Settlement Class Members (and their respective

13    heirs, assigns, successors, executors, administrators, agents and representatives) are conclusively

14    deemed to have released and forever discharged the City from all Released Claims as set forth in

15    the Consent Decree.  All members of the Settlement Class are bound by this Judgment.

16        13.    The benefits described in the Consent Decree are the only consideration, fees,

17    costs and expenses that the City shall be obligated to give to any party or entity, including without

18    limitation the Class Representatives, Settlement Class Members, and Class Counsel in connection

19    with the claims released in the Consent Decree and/or the payment of attorneys' fees, costs and

20    expenses in this action.

21        15.    All members of the Settlement Class are bound by this Judgment.

22        16.    The Consent Decree and this Judgment are not admissions of liability or fault by

23    the City, or a finding of the validity of any claims in this action or of any wrongdoing or violation

24    of law by the City.  The Consent Decree is not a concession by the Parties and, to the fullest

25    extent permitted by law, neither this Judgment, nor any of its terms or provisions, nor any of the

26    negotiations connected with it, shall be offered as evidence or received in evidence in any

27    pending or future civil, criminal, or administrative action or proceeding to establish any liability

28    of, or admission by the City.  Notwithstanding the foregoing, nothing in this Judgment shall be

1    interpreted to prohibit the use of this Judgment to consummate or enforce the Consent Decree or

2    Judgment, or to defend against the assertion of Released Claims in any other proceeding, or as

3    otherwise required by law.

4         17.    In accordance with the terms of the Consent Decree, which is attached hereto, the

5    Court reserves exclusive and continuing jurisdiction over Plaintiffs, the Settlement Class

6    Members, the City, and the Consent Decree throughout the term of the Consent Decree, for the

7    sole purpose of supervising the implementation, enforcement, construction, and interpretation of

8    the Consent Decree and this Judgment.  In that regard, any challenges to the Consent Decree's

9    terms or implementation, whether under state or federal law, shall be subject to the exclusive and

10   continuing jurisdiction of this Court.

11

12        **IT IS SO ORDERED.**

13

14   Dated: _____, 2017

15                                              _____
                                                HON. BARBARA J. ROTHSTEIN
                                                UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO:  2:15-CV-01608-BJR
[PROPOSED] JUDGMENT APPROVING CLASS
ACTION SETTLEMENT

20044 00011 gf265k10fj
670913.1