**THE HON. BARBARA J. ROTHSTEIN**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

CONRAD REYNOLDSON, STUART PIXLEY, and DAVID WHEDBEE, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

CITY OF SEATTLE, a public entity,

Defendant.

No. 2:15-cv-01608-BJP

DECLARATION OF EMILY COOPER IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS

I, Emily Cooper, declare as follows:

1. I am counsel representing Plaintiffs and members of the plaintiff class in the above-captioned action. I am over the age of eighteen, have personal knowledge of the matters contained herein, and am competent to testify thereto.

**I. Experience and Qualifications of Disability Rights Washington Attorneys**

2. Disability Rights Washington (DRW) is a private non-profit organization that serves as the designated Protection and Advocacy System for the State of Washington for citizens of this state who have physical, mental, or developmental disabilities pursuant to the "Developmental Disabilities Assistance and Bill of Rights Acts" (DD), 42 U.S.C. § 15041 *et seq.*; the "Protection and Advocacy for Individuals with Mental Illnesses Act" (PAIMI), as

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

amended, 42 U.S.C. § 10801, *et seq.*; and the "Protection and Advocacy for Individual Rights" (PAIR), 29 U.S.C. § 794e; and RCW 71A.10.080.

3. The Protection and Advocacy Systems were created by Congress to provide independent advocates for people with disabilities in each state and territory. To fulfill this mandate, Congress gave the Protection and Advocacy Systems extraordinary authority to have broad access to restricted facilities and confidential or otherwise protected records of facilities and individuals receiving services in those facilities. 42 U.S.C. § 15043(H)-(J); 45 C.F.R. § 1386.22.

4. Pursuant to its federal mandates, DRW routinely conducts systemic investigations and advocates based upon the finding of those investigations. That advocacy comes in a variety of forms, including affirmative impact litigation on behalf of a class of individuals with disabilities.

5. Between December 2013 and present, the work DRW has done in this case was carried out primarily by DRW attorneys David Carlson, Stacie Siebrecht, and me. Additionally, administrative staff, a volunteer attorney, and interns have assisted significantly with fact development relevant to complaint and resulting consent decree. However, DRW has chosen not to request reimbursement for any non-attorney and volunteer attorney time.

6. David Carlson is the Director of Legal Advocacy at DRW, appointed as class counsel in the above-captioned case. As the Director of Legal Advocacy, he directs DRW's legal and administrative advocacy, investigations of abuse and neglect, monitoring of facilities, and technical assistance supporting self-advocacy efforts conducted on behalf of individuals in Washington who have physical, mental, or developmental disabilities.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

7. Prior to serving as DRW's Director of Legal Advocacy, Mr. Carlson was the Associate Director of Legal Advocacy for DRW from April 2006 to October 2012, and before that, a staff attorney from May 2004 to April 2006. Since joining DRW, Mr. Carlson had exclusively practiced disability law and has been involved in all of the class action lawsuits in which DRW has been appointed class counsel, as well as numerous other individual and group cases with a systemic impact that were not structured as class actions.

8. Mr. Carlson has been admitted to practice law in the state courts of Washington since 2004, which is when he graduated from Gonzaga Law School with honors and served as the Editor-in-Chief of the Gonzaga Law Review. He has been admitted to practice in the United States District Court for the Eastern District of Washington since 2005; the United States District Court for the Western District of Washington since 2006; and the United States Ninth Circuit Court of Appeals since 2007.

9. Mr. Carlson has experience litigating complex class actions designed to secure systemic, sustainable injunctive relief on behalf of individuals with mental illness and other disabilities. His litigation work at DRW includes the following: *T.R., et al. v. Quigley, et al.*, C-09-1677-TSZ (inadequate community based services for youth with serious mental illness to remain at home and avoid incarceration and hospitalization); *Boyle, et al., v. Braddock*, USDC C01-5687-JKA (inadequate assessment, delivery, and due process relating to services for youth and adults with developmental disabilities); *Marr, et al. v. Eastern State Hospital, et al.*, 2011 WL 2260982, USDC CS-02-0067-WFN (inadequate treatment of individuals with dual diagnosis of developmental disabilities and mental illness); *Allen, et al., v. Western State Hospital, et al.*, USDC C99-5018-RBL (similar claims and remedies as *Marr* at Western State hospital); *Rust, et al. v. Western State Hospital, et al.*, USDC C00-5749-RJB; and *G.R. et al., v. State of*

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

*Washington Department of Social and Health Services et al.*, USDC C05-5420-RBL (inadequate notice by the state when it took adverse actions against its clients with developmental disabilities).

10. The advocacy Mr. Carlson led on behalf of DRW in response to the attenuation of growth, removal of breast buds, and unlawful sterilization of a six year old Seattle-area girl named Ashley received the Excellence in Advocacy Award, from the National Disability Rights Network in 2007.

11. The advocacy Mr. Carlson lead on behalf of class members in *T.R. v. Quigley* to reform Washington mental health services for youth was recognized by the Impact Fund, a non-profit dedicated to the support and training of attorneys engaged in system reform litigation, with its annual advocacy award in 2014.

12. Mr. Carlson's expertise in disability law extends beyond his role as a litigator. Since 2010, he has been an adjunct Professor of Law at Seattle University teaching an upper division course on Disability Law. From 2007 to 2013, he represented the federally mandated Protection and Advocacy Systems in the states, territories, and commonwealth within the Ninth Circuit on the Legal Committee of the National Disability Rights Network (NDRN). He currently serve on the NDRN Board of Directors.

13. Stacie Siebrecht is the Director of the Treatment Facility Program at DRW. In this role, she directs and manages all advocacy including the provision of technical assistance services, investigations, monitoring, and representation of individuals or groups residing in facilities serving sixteen or more people with disabilities.

14. Ms. Siebrecht graduated New York University School of Law in 1996 as a member of the Order of Coif and serving on the Review of Law and Social Change.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

15. Ms. Siebrecht then served as a clerk for United States District Judge Raymond J. Pettine before working as a staff attorney for Disability Law Center, the protection and advocacy system in Massachusetts, under a two year Skadden fellowship. Her fellowship focused on developing and filing a class action advocating for the rights of people with developmental disabilities in nursing homes, which over the years since it has been filed has become the leading case in this area of law nationally. *See Rolland v. Cellucci*, 52 F. Supp.2d 231 (1999).

16. Following her fellowship, Ms. Siebrecht joined Disability Rights Washington in 1999 as a staff attorney and she became the Associate Director of Legal Advocacy in 2001.

17. Ms. Siebrecht has served as co-counsel in class action lawsuits while at DRW including, *Rust, et al. v. Western State Hospital, et al.*, challenging unconstitutional conditions of care of patients on forensic unit and resulting in an expansive court ordered settlement and *G.R. et al. vs Gregoire et al.*, bringing a facial challenge to new legislation allowing the state to move individuals who have been adjudicated not guilty by reason of insanity from a state psychiatric facility to a Department of Corrections facility. She also designed and implemented processes to monitor class action settlements including *Boyle* class members on the Children with Intensive Behavioral Needs waiver. *See Boyle,et al. v. Braddock*, USDC C01-5687-JKA. She also has lead outreach, monitoring, and advocacy on behalf of individuals residing at Eastern State Hospital, Residential Habilitation Centers, and in the community.

18. Susan Kas is the currently the Director of the Community Team at DRW. Ms. Kas was admitted to practice in 2005. She has eleven years of disability law and class action experience. Her time recorded in this case was billed when she was a DRW staff attorney.

19. I was admitted to practice law in the State of Washington in November 2003 after receiving my law degree from Seattle University in May 2003.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

20. Since June 2006, I have been practicing disability law at Disability Rights Washington. As a senior attorney at DRW, I investigate allegations of abuse or neglect of individuals with intellectual disabilities, individuals with mental health conditions, and individuals with physical disabilities. I also monitor conditions at facilities and places of public accommodation to assess whether they meet relevant legal standards including whether they comply with the state and federal accessibility requirements. To perform those functions, I often conduct outreach and monitoring of the locations where our constituents live, work, and travel. I also often review records, policies, protocols, and reports of government organizations regarding their legal compliance.

21. My litigation experience includes the following cases: *Trueblood v. DSHS,* C14-01178-MJP (class action lawsuit regarding delays in competency services.); *Ross v. Inslee,* 2014 WL 5421221 4:14-CV-0130-TOR (systemic lawsuit challenging the treatment and release conditions of patients adjudicated Not Guilty by Reason of Insanity and residing at the state psychiatric hospitals); *T.R., et al. v. Quigley, et al.*, C-09-1677-TSZ (class action regarding inadequate community based services for youth with serious mental illness to remain at home and avoid incarceration and hospitalization); *Marr, et al. v. Eastern State Hospital, et al.,* 2011 WL 2260982, USDC CS-02-0067-WFN (class action regarding inadequate treatment of individuals with dual diagnosis of developmental disabilities and mental illness); *In re Guardianship of Lamb,* 173 Wash.2d 173, 265 P.3d 876 (2011) (appeared as amicus and presented oral argument to the Washington State Supreme Court regarding substitute decision making for individuals who are appointed guardians).

22. My experience working with people with disabilities has also been recognized by my selection in the fall of 2014 as an adjunct Professor of Law at Seattle University teaching

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

Introduction to Practice course to a section of first year law students. I have also received the 2016 Governor's Committee on Disability Issues and Employment Carolyn Blair Brown Award for my work on behalf of people with disabilities as well as the 2015 Washington Association of Criminal Defense Lawyers Champion of Justice Award.

## II. Work Performed by DRW Attorneys

23. The following descriptions of the work performed on Plaintiffs' behalf represent the actual number of hours recorded on daily timekeeping records. Each DRW staff member contemporaneously record her or his time to the 1/10th of an hour or 6 minute increments for all activities, regardless of whether the activity involves litigation or will be deemed compensable at some later date. The time requested includes only time spent on tasks directly related to this litigation, non-duplicative tasks, and work necessary to obtain the favorable result of this case. Specifically, this list of time entries excludes time spent on tasks that could be considered inefficient, duplicative, or unnecessary (i.e. updating other team members). Finally, this time does not represent the time spent by volunteer attorneys or non-attorneys.

24. Unlike the work done by an individual lawyer for an individual client, representing a class of thousands of individuals with mobility disabilities to enforce federal and state accessibility standards is necessarily complex and time consuming.

25. The following is a brief summary of the work conducted from November 2013 to the present by the DRW attorneys representing the class.

26. Prior to sending the City of Seattle (hereinafter the "City") our demand letter, we conducted intensive fact development including reviewing the City's current and historic public records regarding curb ramps, construction reports, and transition plans to reach compliance with

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

federal and state law. We also verified hundreds of noncompliant curb ramps by conducting on site measurements and inspection of noncompliant curb ramps throughout the city. *See* Dkt. 1-1.

27. We also conducted extensive outreach to potential plaintiffs, class members, and families to gather facts regarding the impact of the City's failure to comply with federal and state law and create an accessible path of travel. DRW also served as the primary contact for the named plaintiffs and class members.

28. After conducting this fact development, we have worked with Plaintiffs and Plaintiffs' counsel to document our concerns regarding the City's lack of accessible curb ramps in a detailed demand letter and related exhibits.

29. After documenting the lack of compliance, we also drafted and entered into structured settlement negotiations with the City of Seattle for nearly two years to try to develop a reasonable compliance plan.

30. Throughout structured negotiations, we participated in numerous in-person meetings and conference calls, and exchanged and analyzed relevant information about the City's policies, budgets, curb ramp costs, design documents, and other items. We also provided input into the City's job description for an Americans with Disabilities Act (ADA) Coordinator for the pedestrian right of way and into the City's request for proposal for the survey of existing curb ramps.

31. We have used the factual information gathered to prepare and attend each of the structured settlement negotiation meetings held at DRW's offices.

32. Throughout this case, we have responded to calls from class members and allies regarding the location of bad or missing curb ramps as well as how to navigate the city's complaint system.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

33. When structured settlement negotiations fell through, we conducted extensive factual development again to update our table of curb ramp violations and file our complaint. Dkts. 1 and 1-1. We also evaluated and verified the City's curb ramp survey information and conducted a virtual review of "unknown" locations to determine the scope and extent of missing and non-compliant curb ramps throughout the City's pedestrian right of way.

34. Once filed, we initiated formal discovery and reviewed a significant portion of the produced documents.

35. We also worked with the City to draft and enter a stipulated motion for class certification including supporting declarations. Dkt. 29.

36. Finally, we agreed to enter into mediation with the City where we had numerous meetings to try to resolve our claims. After nearly a year of mediation, the parties reached a settlement. Dkt. 40. Throughout the mediation and negotiations, we reviewed and revised multiple drafts of a memorandum of understanding and ultimately the Proposed Consent Decree.

**III. Attorneys' Fees and Costs**

37. The current hourly rates billed for the Disability Rights Washington timekeepers in this case range from $465-495 per hour. While we settled this case in 2017, DRW is only billing at their 2016 rates. DRW's rates are based on a comparison with local co-counsel including Perkins Coie, and MacDonald Hoague & Bayless. Perkins Coie was co-counsel in *T.R. et al. v. Quigley et al.*, which is a class action reforming the state's mental health system for youth. DRW rates are reasonable and are commensurate with Perkins Coie's rates in that case and are identical to the rates DSHS accepted from DRW in the most recent billing cycle for *T.R.* class counsel's work in the implementation phase of that case. Additionally, Judge Marsha J. Pechman, United States District Court in the Western District of Washington, has recently and

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

repeatedly awarded DRW's fees at comparable rates in *Trueblood v. DSHS*. *See* Exhibit A, *Trueblood v. Washington DSHS*, No. C14-1178 MJP (W.D. Wash. June 22, 2015) (Order on Plaintiffs' Motion for Attorneys' Fees and Costs at 4); *Trueblood v. Washington DSHS*, No. C14-1178 MJP (W.D. Wash Oct. 13, 2016) (Order on Plaintiffs' Second Motion for Attorneys' Fees and Costs at 9).

38. DRW endeavored to control fees and costs by reducing duplication of labor and assigning tasks based upon relevant experience. I personally reviewed each of DRW's time entries to ensure accuracy, validity, and compensability under the law. In doing so, I exercised billing judgment and reduced our claims to ensure the foregoing. For instance, DRW did not bill for any paralegal or public policy work. The number of hours expended by each of the DRW attorneys accurately represents the hours actually worked which were necessary to litigate this case.

39. The following chart sets forth the hours billed (after the exercise of billing judgment) by the various DRW timekeepers:

| **Timekeeper** | **Rate** | **Hours** | **Fees** |
|---|---|---|---|
| Carlson, David | $495 | 54.9 | $27,175.50 |
| Cooper, Emily | $495 | 501.3 | $248,143.50 |
| Kas, Susan | $480 | 5.7 | $2,736.00 |
| Siebrecht, Stacie | $495 | 366.4 | $181,368.00 |
| **Total** | | **928.3** | **$459,423.00** |

40. After the exercise of billing judgment, DRW reduced its original attorneys' fee request by over 13% to its current request of $459,423.00. This reduction is on top of DRW's

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

exclusion of charges for work completed by non-attorneys and volunteer attorneys. DRW will provide detailed records of individual timekeeping upon request.

41. DRW incurred reasonable costs of $8.833.03, comprised in large part of mediation fees that were over $4000, court filing fees, and tele-communication costs. DRW will provide detailed records of costs upon request.

42. The named representative plaintiffs in this class action have agreed to transfer their right to collect attorneys' fees and costs to class counsel through confidential retainer agreements.

43. None of the fees or costs paid to DRW directly benefit any of the individual DRW attorneys who worked on the case. Instead, all fees and costs are distributed back into the programs that fronted the costs to begin with in order to fund future work of a similar nature.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Dated this 6th day of September, 2017 at Seattle, Washington.

/s/ Emily Cooper
Emily Cooper, WSBA #34406

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729