Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CONRAD REYNOLDSON, STUART PIXLEY, and DAVID WHEDBEE, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>CITY OF SEATTLE, a public entity,<br><br>        Defendants. | Case No.: 2:15-cv-01608-BJR<br><br>JOINT MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT |

**CLASS ACTION**

Plaintiffs Conrad Reynoldson, Stuart Pixley, and David Whedbee ("Plaintiffs"), on behalf of themselves and the certified class, and Defendant City of Seattle (the "City") jointly request final approval of a proposed class action Consent Decree ("Consent Decree" or "Decree") that provides extensive injunctive relief to a class of tens of thousands of people with mobility disabilities ("Settlement Class" or "Class Members") who use the City's pedestrian facilities, while eliminating the risk of duplicative litigation.   The proposed Consent Decree ("Consent Decree" or "Decree") that embodies the parties' settlement[1] requires the City, in conjunction with third parties, to install or remediate 1,250 curb ramps per year for the

---

[1] The proposed Consent Decree is attached as Exhibit 1 to the Declaration of Timothy P. Fox in Support of Joint Motion for Preliminary Approval of Settlement. ECF No. 41-1.

eighteen-year term of the Decree ("Compliance Period"). The Consent Decree makes allowances for minor variations to this schedule, but it guarantees the installation or remediation of at least 22,500 curb ramps during the Compliance Period, and requires that those curb ramps will meet the 2010 Americans with Disabilities Act ("ADA") Standards for Accessible Design ("2010 ADA Standards"), or any subsequently adopted federal disability access standards that apply to the pedestrian rights-of-way during the Compliance Period. To meet this requirement, when the City alters roadways or pedestrian facilities, it will install curb ramps where missing and upgrade curb ramps where present but noncompliant. Similarly, where streets are altered by utilities, other public entities, or private developers, curb ramps will be installed or remediated in accordance with the 2010 ADA Standards or subsequently adopted federal disability access standards that apply during the Compliance Period. As a result of these provisions, nearly $300 million dollars will be spent installing and remediating curb ramps in the City's pedestrian right-of-way in order to comply with federal and state disability access laws. *See* Declaration of Timothy P. Fox in Support of Joint Motion for Preliminary Approval, ECF No. 41, ¶ 34.

The Consent Decree also provides that the City will improve its system for Class Members to request that curb ramps be installed or repaired at specific locations, and that the City will make its best efforts to investigate those requests within 30 days of receipt and fulfill the requests within twelve months of receipt, with limited exceptions. In addition, the Consent Decree requires that the City maintain its ADA Coordinator position within the Seattle Department of Transportation ("SDOT").[2] The Decree also includes effective mechanisms for

_____

[2] SDOT first hired its dedicated ADA Coordinator in March 2015. The City had employed a Citywide ADA Coordinator prior to this date. *See* Declaration of Lorraine Lewis Phillips in Support of Joint Motion for Final Approval, filed herewith ("Phillips Decl."), ¶ 2.

reporting, monitoring, and dispute resolution to ensure that the City complies with its obligations to the Class throughout the term of the Decree.

The Consent Decree is the result of more than three years of factual investigation and arms-length negotiation.  The parties reached agreement after four formal mediation sessions under the supervision of Teresa A. Wakeen, and many in-person and telephone negotiations between counsel.  On July 19, 2017, this Court preliminarily approved the Decree.  ECF No. 42.  Since then, the parties have caused notice of the Decree to issue in conformance with the Court's Order.  To date, no Class Member or any other person entitled to notice has objected to any aspect of the proposed Decree.  The absence of any objections is a strong indication that the proposed Decree is fair, reasonable and adequate.  It satisfies all of the criteria for final settlement approval under Rule 23 of the Federal Rules of Civil Procedure.  Accordingly, the parties ask that the Court confirm the certification of the Settlement Class and grant final approval to the Decree.

## I.    BACKGROUND

### A.    Negotiation and Class Certification

On January 17, 2014, Plaintiffs' Counsel sent a letter to the offices of the Seattle City Attorney and SDOT alleging that the City lacked adequate curb ramps that comply with applicable requirements of federal and Washington State disability rights laws.  ECF No. 41 ¶ 13.  The letter proposed that the parties work cooperatively to resolve these problems as an alternative to litigation.  *Id.*  On February 19, 2014, the parties signed an agreement to toll the statute of limitations for all claims under federal and state law based on the City's alleged failure to provide adequate curb ramps for individuals with mobility disabilities.  *Id.* ¶ 14.  For nearly two years, the parties exchanged information and documents pertaining to the status of existing curb ramps in the City's pedestrian rights-of-way, the City's ongoing and future

construction and remediation of curb ramps in the City's pedestrian rights-of-way, the identification of locations where the installation or remediation of curb ramps remained necessary, and the City's past and present policies concerning curb ramps. *Id.* at ¶ 17. Plaintiffs' Counsel created a database to be able to analyze all of this information in the aggregate. *Id.* at ¶ 8. Plaintiffs' Counsel also conducted in-person inspections of various curb ramps and sidewalk corners in Seattle's pedestrian rights-of-way in order to substantiate Plaintiffs' position regarding Seattle's noncompliant sidewalk corners and curb ramps. *Id.* at ¶ 9. Although negotiations were productive, the parties ultimately did not reach a resolution while avoiding litigation. *Id.*

On October 8, 2015, Plaintiffs filed a putative class action in this Court. (ECF No. 1.) They alleged, on behalf of themselves and all others similarly situated, that the City had failed and was failing to install and maintain curb ramps that are necessary to make its pedestrian rights-of-way readily accessible to individuals with mobility disabilities in violation of Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and the Washington Law Against Discrimination, 49 Wash. Rev. Code §§ 49.60.010 *et seq.* ("WLAD"). Plaintiffs also alleged that the City had violated and was violating the ADA, Section 504, and WLAD by failing to install or remediate curb ramps in conjunction with new construction and alteration of streets, bus stops, and sidewalks. *Id.* ¶ 1.

On January 12, 2016, the City answered, denying liability and asserting that the City had complied with and was continuing to comply with its obligations under the ADA, Section 504 and all other similar statutes and that the City's services, programs and activities, when viewed in their entirety are accessible to persons with disabilities. (ECF No. 22). The City further answered that at the time the Complaint was filed, the City was engaged in an ADA Self-

Evaluation, which was comprised of a City-wide survey of the attributes of its known curb ramps conducted by an outside consultant ("KFH Survey").  Plaintiffs had been involved in designing the parameters of the KFH Survey before they filed this case.  Declaration of Linda M. Dardarian in Support of Joint Motion for Final Approval of Class Action Settlement ("Dardarian Decl."), filed herewith, ¶ 2.

On April 25, 2016, the parties filed a stipulated motion for class certification under Federal Rule of Civil Procedure 23(b)(2).  (ECF No. 29.)  On May 2, 2016, the Court granted the motion, certifying a Class defined as:

> All persons (including residents of and/or visitors to the City of Seattle) with any mobility disability, who, at any time prior to judgment in this action, have been denied full and equal access to the City of Seattle's pedestrian right of way due to the lack of a curb ramp or a curb ramp that was damaged, in need of repair, or otherwise in a condition not suitable or sufficient for use.

ECF No. 30.

Since filing this case, Plaintiffs have served the City with two sets of interrogatories, two sets of requests for production of documents, and three sets of requests for admission.  ECF No. 41 ¶ 17.  The purpose of these discovery requests was to clarify the scope of the City's obligations under the ADA, Section 504, and WLAD, as well as identify future work needed to ensure compliance with these statutes.  *Id.*  As part of the discovery process, the City collected over 2.5 terabytes (TB) of data from SDOT, and provided to Plaintiffs voluminous information regarding the City's past, present, and future work to improve accessibility in the pedestrian rights-of-way.  *Id.*  The City also provided Plaintiffs full and unrestricted access to SDOT's asset management database ("Hansen") and the complete results of the KFH Survey.  Finally, the City voluntarily made SDOT staff available to the Plaintiffs on multiple occasions to provide information and training on use of the Hansen database and other technical issues.  *Id.*

Beginning on May 24, 2016, the parties participated in four mediation sessions under the supervision of Mediator Teresa A. Wakeen.   These mediations and the accompanying negotiations were time- and resource-intensive for both parties and ultimately succeeded in resolving this action.  *Id.* ¶ 18.

**B.   Preliminary Approval**

On July 19, 2017, this Court granted preliminary approval of the Consent Decree, including (1) approving certification of the proposed settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(2), and appointing named Plaintiffs and their counsel as representatives of the Settlement Class; (2) approving the proposed Class Notice and its distribution to Class Members and all persons entitled thereto; (3) ordering an implementation and notice schedule, including deadlines for submission of objections; and (4) scheduling the final approval hearing for November 1, 2017.  ECF No. 42 at 2-6.  The Court also determined, on a preliminary basis, that the Decree was "fair, adequate and reasonable to all potential Class Members" and that it appeared to have been reached as the result of good faith, prolonged, serious, and non-collusive arms-length negotiations."  ECF No. 42 at 2-3.

**C.   Notice to the Class and Absence of Objections**

After preliminary approval, the parties effected notice pursuant to this Court's Order granting preliminary approval of the Consent Decree.  Phillips Decl., ¶¶ 2-9.  Within 30 days after issuance of the Preliminary Approval Order, the City caused notice of the settlement to be published for four (4) consecutive weeks in the following papers of general circulation: *The Seattle Times* in English, *El Mundo* in Spanish, *Seattle Chinese Post* in Chinese, and *Northwest Vietnamese News* in Vietnamese. *Id.* ¶ 4.  Such notice included: (i) a brief statement of the *Reynoldson* Action, the settlement embodied in the Consent Decree, and the claims released by

the Settlement Class; (ii) the date and time of the Final Approval Hearing of the proposed Consent Decree (November 1, 2017 at 10:00 a.m.); (iii) the deadline for submitting objections to the proposed Consent Decree; and (iv) the web page, address, and telephone and fax numbers that may be used to obtain a copy of the Notice of Settlement (substantially in the form attached to the Consent Decree as Exhibit "B") in English, Spanish, Chinese and Vietnamese, or alternative accessible formats for individuals with visual impairments. *Id.* ¶ 5. The City paid the costs for the translation of the notice and publication. *Id.* ¶ 6.  Within ten days after the issuance of the Preliminary Approval Order, Class Counsel provided a copy of the Notice of Settlement to a list of organizations that serve individuals with Mobility Disabilities.  Declaration of Timothy P. Fox in Support of Joint Motion for Final Approval of Class Action Settlement, filed herewith, ¶ 3; Declaration of Caitilin Hall in Support of Joint Motion for Final Approval of Class Action Settlement ("Hall Decl."), filed herewith, ¶¶ 3-7. The list of organizations is Exhibit "C" to the Consent Decree.  ECF No. 41-1 at 53.

Finally, within 20 days after the issuance of the Preliminary Approval Order, each firm making up Class Counsel posted on its website a copy of the Notice of Settlement in English, Spanish, Chinese and Vietnamese, and in an accessible electronic format that can be recognized and read by software commonly used by individuals with visual impairments to read web pages.  Hall Decl. ¶ 3; Dardarian Decl. ¶¶ 3-4; Declaration of Tina Pinedo in Support of Joint Motion for Final Approval of Class Action Settlement, filed herewith, ¶ 2.  The City likewise posted a copy of the Notice of Settlement on the City's official website (www.seattle.gov) for four consecutive weeks, and made the notice available in English, Spanish, Chinese and Vietnamese.  Phillips Decl. ¶ 8.

Distribution of the notice through publication in multiple languages in multiple local newspapers and posting on multiple accessible websites, coupled with facilitating the direct mailing or emailing of the notice to individual members of the Settlement Class by those organizations that serve them, ensured that the notice reached the maximum number of members of the Settlement Class in the most efficient and cost-effective manner.   The proposed form of notice and the proposed distribution plan fairly apprised members of the Settlement Class of the settlement and their options with respect thereto, and fully satisfied due process requirements for a Rule 23(b)(2) settlement class with no opt-out rights.

As of the date of this filing, the parties have received no objections to the Settlement Agreement.   *See* Declaration of Timothy P. Fox re: Absence of Objections to Proposed Class Action Settlement, ECF No. 51, ¶ 5.

## II.   SUMMARY OF FINAL SETTLEMENT

The Consent Decree, attached in full as Exhibit 1 to the Declaration of Timothy P. Fox in Support of Joint Motion for Preliminary Approval of Class Action Settlement (ECF No. 41-1), includes the following negotiated and agreed-upon terms:

### A.   Certification of the Settlement Class

The parties stipulated to a Settlement Class for injunctive relief under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, defined as:

> all persons (including residents of and/or visitors to the City of Seattle) with any mobility disability, who, at any time prior to judgment in this Action, have been denied full and equal access to the City's pedestrian right of way due to the lack of a curb ramp or a curb ramp that was damaged, in need of repair, or otherwise in a condition not suitable or sufficient for use.

Ex. 1 at 9.   This definition is identical to that of the certified Class and therefore does not expand the class membership or legal claims that this Court has previously certified.   It is therefore appropriate for final class certification under Rules 23(a) and (b)(2).   This Court

previously certified the proposed Settlement Class.  ECF No. 42 at 2.

The proposed Settlement Class continues to meet the requirements of numerosity, commonality, typicality, and adequacy of representation.   The Settlement Class is still comprised of tens of thousands of persons with mobility disabilities who, like the Named Plaintiffs, have encountered inaccessible curb ramps throughout the City's pedestrian right-of-way and seek indivisible injunctive relief.   The Supreme Court has observed that such civil rights class actions are particularly well-suited for certification under Rule 23(b)(2).  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361 (2011) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)).   Accordingly, the parties respectfully request that the Court certify the Class for final settlement purposes under Rule 23(b)(2).

**B.**   **Injunctive Relief**

**1.**   **Installation and Remediation of Curb Ramps**

**a.**   **New Construction and Alteration**

Under the Consent Decree, when the City performs construction or alteration of its roadways or pedestrian facilities, the City (and applicable third parties such as utility providers or private developers) will install accessible curb ramps where ramps are missing and upgrade curb ramps that do not comply with applicable disability access standards at all locations affected by the project.  Decree §§ V.3.1, 3.2; 28 C.F.R. § 35.151(a), (b).  The only exceptions arise where the City can demonstrate that installation or upgrade is structurally impracticable, in conjunction with new construction, *see* 28 C.F.R. § 35.151(a)(2), or technically infeasible, in conjunction with alteration of an existing facility, *see* 28 C.F.R. § 35.151(b)(2). Decree V.2.1, V.2.2.  When construction projects that affect the pedestrian rights-of-way occur, the City will ensure that accessible temporary routes are provided and have appropriate signage directing persons with mobility disabilities to such accessible temporary routes.  *Id.* § 2.3.  The City will

also use its best efforts to ensure that all third-party construction, alteration, and development projects affecting pedestrian facilities are performed in compliance with disability access standards. *Id.* § 2.4.

If, at any point, the City determines that installation or remediation of a curb ramp is structurally impracticable or technically infeasible, it will ensure that a curb ramp is installed or remediated such that it complies with accessibility laws to the maximum extent feasible. *Id.* §§ 3.1, 3.7, 5.4. A determination of structural impracticability or technical infeasibility must be supported by adequate documentation. *Id. § 4.3.*

**b.** **Annual Commitment**

The Consent Decree requires the installation or remediation of a certain number of curb ramps in the City in each calendar year (the "Annual Commitment"). The Annual Commitment includes curb ramps installed or remediated in conjunction with new construction and alteration of roadways and pedestrian facilities, as well as those installed or remediated in response to requests made by persons with mobility disabilities. *Id.* The Annual Commitment also includes the installation of new Accessible Curb Ramps and remediation of existing non-Compliant curb ramps anywhere within the City by the City or by any third-party, and includes curb ramps that are remediated or installed pursuant to the Curb Ramp Request System. *Id.* For the period commencing July 1, 2017 and ending on December 31, 2017, and the period commencing January 1, 2035 and ending on July 1, 2035, the Annual Commitment is 625 ramps. For all calendar years in between January 1, 2018 and December 31, 2034, the Annual Commitment is 1250 ramps. Decree § V.3.1.

The Consent Decree permits the City to install and remediate curb ramps ahead of this schedule. If it does so, the City may "bank" up to a total of 625 curb ramps, which it may then credit to a later calendar year. *Id.* § 3.2. In addition, if the City experiences unexpected delays

in major capital improvement projects based on factors outside of the City's control, it may install or remediate up to 225 fewer than the Annual Commitment of curb ramps, but it must make up the deficit within two years.  *Id.*

As a result of these provisions, nearly $300 million dollars will be spent by the City and other third parties to install and remediate curb ramps in accordance with federal and state disability access laws.  ECF No. 41 ¶ 34.

## 2.  **Prioritization and Transition Plan**

Apart from the curb ramps that it installs and remediates in conjunction with new construction and alterations in roadways and pedestrian facilities, the City will prioritize curb ramp installation and remediation based on their proximity to the following locations:

a.  Government offices, facilities, and schools (including the pedestrian rights of way adjacent to facilities owned or operated by the City, and the paths of travel leading from such adjacent pedestrian rights of way to the primary entrances to such facilities);

b.  Transportation corridors;

c.  Hospitals, medical facilities, assisted living facilities and other similar facilities;

d.  Places of public accommodation such as commercial and business zones;

e.  Facilities containing employers; and

f.  Residential neighborhoods.

*See* 28 C.F.R. § 35.150; Decree § V.3.5.

Under the Consent Decree, the City will create a Transition Plan pursuant to 28 C.F.R. § 35.150(d).  *See also* 45 C.F.R. § 84.22(e).  The Transition Plan will identify specific projects and specific curb ramps to be installed and remediated in fulfillment of the City's Annual Commitment under the Consent Decree.  Decree § V.3.6.  The Transition Plan will be updated

periodically to specifically identify additional projects and curb ramps to fulfill the City's Annual Commitment.  The Transition Plan and updates to the Transition Plan will follow the order of priorities set out above and also incorporate input from Plaintiffs, Class Members, and government agencies, such as the Washington State Department of Transportation, Sound Transit, and Seattle Public Schools.  *Id.*

3.  **Curb Ramp Request Program**

Throughout the eighteen-year Compliance Period, the City will maintain a procedure for residents to request installation, remediation, and maintenance of curb ramps.  Decree § V.5.1. Within thirty days of the effective date of the Consent Decree, the parties will agree upon both the form for submitting requests, and the method or methods for submitting requests, including through an easily locatable and accessible form on the City's website that complies with the Web Content Accessibility Guidelines, a toll-free telephone number, electronic mail, standard mail, and/or other non-onerous methods for making requests.  The City will document receipt of each curb ramp request, assign each request a specific identification number (or other identifying information), and log the request into a software program or other electronic system that records the requestor's name and contact information, the date of the request, and the location of the requested curb ramp installation or repair.  By no later than thirty days from the effective date of the Consent Decree, the City will update its current website to describe the methods for making curb ramp requests and the process and timeline for fulfilling those requests.  *Id.* § V.5.6.

Within 15 days of receipt, the City will notify requestors that their requests have been received.  *Id.* § V.5.2.  The City will use its best efforts to investigate each request within 30 days of receipt.  *Id.* § V.5.3.  With limited exceptions, the City will use its best efforts to install

or repair each requested curb ramp within twelve months of receiving the request.  *Id.* § V.5.4.

## 4.   ADA Coordinator

Throughout the Term, SDOT will continue to employ an ADA Coordinator who will assist in developing the Transition Plan and implementing the Consent Decree.  *Id.* § V.1.2. The individual selected as the ADA Coordinator will have qualifications comparable to the following: (i) experience in evaluating or assisting public entities in evaluating the accessibility of facilities under Title II of the ADA and Section 504; (ii) knowledge of current federal and state accessibility standards; (iii) a minimum of five (5) years' experience in providing ADA consulting services related to accessible facilities; and (iv) a degree in civil engineering, urban planning, or architecture.  *Id.* § V.1.1.  SDOT hired a dedicated ADA Coordinator in March of 2015, approximately one year into the parties' settlement negotiations.  Phillips Decl. ¶ 2.

## 5.   Reporting

On an annual basis during the first quarter of each year of the Decree, the ADA Coordinator will report to the parties, in writing, regarding the status of the City's compliance with the Consent Decree.  Decree § V.7.1.  As a component of its annual report, the City shall provide access to the following information, including remote access to the City's databases and data management programs, if applicable: (a) a list that identifies the curb ramps that will be installed or remediated for the coming year, and those that were installed or remediated during the past year; (b) access to documentation regarding determinations that a particular curb ramp was structurally impractical, technically infeasible, or made accessible to the maximum extent feasible; (c) a description of all curb ramp requests made during the past year; (d) access to photographs of all curb ramps that were installed or remediated over the previous year; (e) access to photographs of all curb ramp locations that the City contends were subject to

structural impracticability or technical infeasibility defenses; and (f) all complaints and grievances received by the Seattle Department of Transportation or the City ADA Coordinator related to curb ramps.  *Id.*

## C.   Monitoring

Throughout the Term, Plaintiffs and Plaintiffs' Counsel may conduct periodic inspections of the City's curb ramp drawings and designs, and copies of such drawings and designs will be provided to Plaintiffs and Plaintiffs' Counsel upon reasonable request.  Decree § V.7.3.  Plaintiffs and Plaintiffs' Counsel may also inspect work being done in the City's pedestrian rights-of-way to install accessible curb ramps or to remediate existing curb ramps in order to monitor compliance with the Consent Decree.  *Id.*  Any review by Plaintiffs and/or their Counsel shall be undertaken in a manner to assure it will not unreasonably interfere with the City's operations.  Throughout the Term, Plaintiffs may request to meet with the City to discuss the City's efforts to implement the Consent Decree and attempt to resolve any disputes regarding its implementation or enforcement.  *Id.* § V.7.2.

The City will pay Plaintiffs' Counsel their reasonable attorneys' fees, expenses, and costs for work performed during the Compliance Period that is reasonably necessary to monitor, implement, and administer the Consent Decree, subject to the following limitations: for the first year ending January 31, 2018, up to a cap of $40,000; for the second year ending January 31, 2019, up to a cap of $40,000; for years 3 to 18 including February 1, 2019 through the end of the Term, up to a cap of $20,000 per year.  *Id.* § VI.2.2.

## D.   Dispute Resolution

Enforcement of the Consent Decree will be subject to the continuing jurisdiction of this Court.  *Id.* § V.9.3.  If either party believes that a dispute exists relating to any violation of or

failure to perform any of the provisions, that party will first provide a written statement describing the alleged breach, after which the other party will have 15 business days to provide a written response and 45 days to cure the alleged breach.  *Id.* § V.9.1.  At that point, if the party alleging a breach is not satisfied, the parties will meet and confer in person or by telephone, and the other party will have an additional thirty days to cure.  *Id.*  If the parties are unable to resolve the dispute informally, they will engage in good faith efforts to resolve it through mediation.  *Id.* § V.9.2.  The City will pay Plaintiffs' Counsel their reasonable attorneys' fees, expenses, and costs incurred in resolving disputes, subject to a cap of $50,000 per dispute.  Should the Parties mediate a dispute, they shall evenly split any fees paid to the mediator.  *Id.* § VI.2.5.

## E.   **Release of Claims**

In exchange for the injunctive relief proposed in the Agreement, Plaintiffs have agreed to release any injunctive, declaratory, or non-monetary claims against the City that were brought, could have been brought, or could be brought now or in the future by the Settlement Class relating to or arising from any of the City's alleged actions, omissions, incidents, or conduct related to the installation, remediation, repair or maintenance of curb ramps in the City's pedestrian right-of-way at any time prior to the effective date of the Consent Decree through the end of the Term.  *Id.* § VIII.1.  The release does not apply to claims related to monetary damages, personal injuries, or property damage with respect to unnamed Class Members.  *Id.*  It also does not apply to components of the City's sidewalk system other than curb ramps.  *Id.* § V.2.

**F.    Awards to Named Plaintiffs and Class Counsel's Attorneys' Fees, Expenses, and Costs**

On September 6, 2017, Plaintiffs filed a motion for class representatives' service awards.  ECF No. 43.  For the reasons set forth in the application, the Court should award each Plaintiff $5,000 for his service to the Class and general release of claims.

Plaintiffs have also filed a motion for an award of reasonable attorneys' fees, expenses and costs.  ECF No. 47.  The City agrees that, if the Court grants final approval of the Consent Decree, Plaintiffs are prevailing parties for the purposes of awarding reasonable attorneys' fees and costs.  The City and Plaintiffs have settled on an amount for an award of reasonable attorneys' fees, costs, and expenses.  The Plaintiffs' motion for fees should be granted for the reasons set forth therein.  *See* ECF Nos. 47-50.

## III.    LEGAL ARGUMENT

**A.    The Class Action Settlement Embodied in the Consent Decree Is Fair and Reasonable and Should Be Granted Final Approval.**

Judicial approval of a class action settlement under Rule 23 generally involves three steps.  First, at the preliminary approval hearing, the parties "submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation."  Federal Judicial Center, Manual for Complex Litigation (4th ed. 2004), § 21.632 ("Manual").  Second, if preliminary approval is granted, the class representatives must disseminate notice of the proposed settlement to affected class members.  *Id.* § 21.633.  Third, the court conducts a final approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning fairness, adequacy, and reasonableness of the settlement are presented.  *Id.* § 21.634.  This procedure safeguards class members' procedural due process rights and enables the court to fulfill its role as the guardian of class interests.  *See* Newberg on

Class Actions, § 13.39 (5th ed. 2016) ("Newberg").

The law favors compromise and settlement of class action lawsuits.  *See, e.g., Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  The Ninth Circuit recognizes the "overriding public interest in settling and quieting litigation . . . particularly . . . in class action suits . . . ."  *Van Brokhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also In re Synocor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("There is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.").

To grant final approval of a settlement, "Fed. R. Civ. P. 23(e) requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Officers for Justice*, 688 F.2d at 625 (the "universally applied standard" is whether the settlement is "fundamentally fair, adequate, and reasonable").  "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026.

In determining whether the settlement is fair, adequate, and reasonable, the Court must balance several factors, including: the strength of the plaintiff's claims; the likely risks and expenses involved in further litigation; the risk of maintaining class action status throughout trial; the value offered in settlement; the extent of discovery and other litigation completed; the experience and views of counsel; and the views of class members toward the settlement.  *See Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 542 (W.D. Wash. 2009).

Although the Court must "explore [] comprehensively all factors" it is not required to "reach any ultimate conclusions on the contested issues of fact and law which underlie the

merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of

wasteful and expensive litigation that induce consensual settlements." *Rodriguez v. W. Publ'g*

*Corp.*, 563 F.3d 948, 964 (quoting *Officers for Justice*, 688 F.2d at 625). As discussed below,

final approval of the parties' settlement fulfills the required factors.

1.   **The Settlement Is Entitled to a Presumption of Fairness.**

Where a settlement is the product of arms-length negotiations conducted by experienced

class counsel, the Court begins its analysis with a presumption that the settlement is fair and

reasonable. *See* 5 Newberg § 13.45; *Dunakin v. Quigley*, 2017 WL 123011, at \*2 (W.D. Wash.

2017); *Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal.

2004). At this stage, where this Court has granted preliminary approval of the settlement,

which was the result of the parties' arms-length negotiations and the judgment of experienced

counsel following sufficient investigation and discovery, the presumption applies and the

settlement should be approved.

First, the parties reached the Consent Decree after four formal mediation sessions under

the supervision of Teresa A. Wakeen and many in-person and telephone negotiations between

counsel. *See* ECF No. 41 ¶ 18. Negotiations took place over the course of more than three

years. *Id.* ¶ 14.

Second, Class Counsel have extensive experience litigating and settling disability rights

class actions and other complex matters. *See id.* ¶ 41; Declaration of Timothy P. Fox in

Support of Joint Motion for Class Certification (ECF No. 29-4) ¶ 3; Declaration of Linda M.

Dardarian in Support of Joint Motion for Class Certification (ECF No. 29-2) ¶¶ 4-16;

Declaration of David Carlson in Support of Joint Motion for Class Certification (ECF No. 29-

3) ¶¶ 5-15. They have diligently investigated the factual and legal issues raised in this action

for over three years.  ECF No. 41 ¶¶ 5-12.  As noted above, extensive discovery, both formal and informal, has allowed the parties to assess the strengths and weaknesses of the claims herein and the benefits of the Consent Decree.  *Id.*  Class Counsel are confident that the relief achieved by the proposed settlement is sufficient to address the concerns identified in the Complaint.  *Id.* ¶¶ 35-7.  Thus, the fact that qualified, well-informed counsel endorse the Consent Decree as being fair, reasonable, and adequate weighs in favor of final approval.  *See True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1078-79 (C.D. Cal. 2010); *Nat'l Rural Telecomm's Coop.*, 221 F.R.D. at 528.

**2.      The Absence of Objections to the Proposed Settlement Agreement Strongly Favors Final Approval.**

In determining the fairness of a settlement, the Court should consider class member objections to the settlement.  The absence of a large number of objections to a proposed settlement raises a strong presumption that the terms of the agreement are fair.  *See, e.g.*, *Churchill Vill., L.L.C.*, 361 F.3d at 577 (approving a settlement where "only 45 of the approximately 90,000 [.005 percent] notified class members objected to the settlement"); *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529.

Here, the fact that the Parties have received no objections to the Settlement Agreement weighs strongly in favor of final approval. *See* ECF No. 51 ¶ 5.

**3.      The Settlement Is Fair Given the Benefits to the Class and the Risks Associated with Continued Litigation.**

The significant benefits that the Settlement Class will enjoy under the Consent Decree, considered in light of the risks of litigation, support final approval.

**i.      The Settlement Will Result in Substantial Benefits to the Class.**

Under the Settlement, 1,250 curb ramps in the City will be installed or remediated every year for the next eighteen years.  The Consent Decree makes allowances for minor variations to

this schedule, but it guarantees the installation or remediation of 22,500 curb ramps during the Term, a commitment that substantially exceeds past rates of curb ramp construction in the City. ECF No. 41 ¶ 34.  In meeting this requirement, when the City alters roadways or pedestrian facilities, it will install curb ramps where missing and upgrade curb ramps where present but noncompliant.  Similarly, where streets are altered by utilities, other public entities, or private developers, curb ramps will be installed or remediated to become accessible.  As a result of these provisions, nearly $300 million dollars will be spent by the City and other third parties to install and remediate curb ramps in the City in compliance with federal and state disability access laws.  *Id*.  In addition, the City's curb ramp request system will enable Class Members to have input on the locations of the curb ramps that the City will install and remediate.  *Id.* ¶ 23.  By the end of the term of the Proposed Consent Decree, Seattle's curb ramp system will be substantially more accessible than it is today.  *Id.* ¶ 37.

Thus, the Consent Decree will provide injunctive relief that is reasonably calculated to effectuate the repairs necessary to make the City's curb ramps accessible to persons with mobility disabilities.  This is an excellent result for the Settlement Class, and it is unlikely that this Court would order greater relief.  *See id.* ¶ 32.  In comparison, courts routinely approve class action settlements in which the value of class relief is much less than what could have been obtained at trial.  *See, e.g.*, *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) (a proposed settlement should not "be judged against a hypothetical or speculative measure of what might have been achieved") (quoting *Officers for Justice*, 688 F.2d at 625)); *Rinky Dink, Inc. v. World Business Lenders, LLC*, 2016 WL 4052588, at *5 (W.D. Wash. 2016) ("a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement ... unfair") (citing *Officers for Justice*,

688 F.2d at 628).   Accordingly, the substantial benefits to the Settlement Class weigh in favor of final approval of the Consent Decree.

ii.   **The Litigation Risks Support Final Approval.**

The potential risks attending further litigation support final approval.   "Estimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)."   *Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM (JCx), 2012 WL 10274679, at *11 (C.D. Cal. Nov. 13, 2012).   Litigation and trial of this matter would require the expenditure of significant resources by the Parties and the Court, including resources and time spent on fact and expert discovery, further analysis of data, depositions of Class Members, City employees, and experts.   Additional resources would be required to complete post-trial briefing and resolve any appeals.   ECF No. 41 ¶ 39.   In short, this settlement obviates the need for further costly and time-consuming litigation that would consume resources better spent on increasing accessibility.

In addition, this case presents several novel issues that the City raised in its Answer to Plaintiffs' Complaint or in settlement negotiations, which could be resolved against Plaintiffs. Those novel issues include the City's defenses as to claims that the City failed to provide program access to its pedestrian rights-of-way under the ADA and Section 504, and whether the City can be held liable for curb ramp accessibility claims dating back to 1977, the effective date of Section 504.   Recently, the Ninth Circuit ruled that in order to establish class-wide liability for a city's failure to provide programmatic access to its pedestrian-right-of-way, the plaintiffs need to provide "evidence sufficient to show that the City's public right-of-way … when viewed in [its] entirety, [was] not readily accessible to and usable by individuals with disabilities."   *See Kirola v. City and County of San Francisco*, 860 F.3d 1164, 1184 (9th Cir.

2017).   Anecdotal testimony from several class members and expert testimony about a fraction of the facilities in the pedestrian right-of-way do not suffice.  *Id.*  at 1183-84.   Accordingly, there is real risk and substantial expense associated with continued litigation.  *Id.* ¶ 40.   Here, proceeding to trial, along with possible appeals, could delay resolution of this matter by several years.  *Id.* ¶ 41.   By contrast, under the Consent Decree, improvements have already begun. *See* Decree Definition I; ECF No. 41 ¶ 41.   By December 31, 2017, 625 curb ramps in the City will have been installed or remediated under the terms of the Decree.  Decree § V.3.1.  Given the importance of the accessibility of the City's pedestrian rights-of-way to Class Members' lives, the difference between the potentially long delay occasioned by continued litigation and the immediate improvements promised by the Consent Decree is an important consideration. The risks of continued litigation therefore weigh in favor of final approval.  ECF No. 41 ¶ 42.

## IV.   CONCLUSION

For the foregoing reasons, the parties respectfully request that this Court: (1) grant final approval of the Consent Decree; (2) grant final certification of the Settlement Class conditionally certified in this Court's Preliminary Approval Order of July 19, 2017; and (3) retain jurisdiction over the litigation and the parties throughout the Term of the Consent Decree.

*///*

Dated: October 27, 2017.

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

*/s/ Linda M. Dardarian*
Linda M. Dardarian (CA SBN 131001)
ldardarian@gbdhlegal.com
Andrew P. Lee (CA SBN 245903)
alee@gbdhlegal.com
Raymond A. Wendell (CA SBN 298333)
rwendell@gbdhlegal.com
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
(510) 763-9800
(510) 835-1417 (Fax)

Attorneys for Plaintiff and the Putative Class

PETER S. HOLMES

Seattle City Attorney

*/s/ Lorraine Lewis Phillips*
Lorraine Lewis Phillips (WSBA 33126)
Assistant City Attorney

PACIFICA LAW GROUP LLP

*/s/ Kymberly K. Evanson*
Paul J. Lawrence (WSBA 13557)
Kymberly K. Evanson (WSBA 39973)

Attorneys for Defendant City of Seattle

Case No. 2:15-cv-01608-BJR
JT. MTN. FOR FINAL APP. OF CLASS ACTION SETTLEMENT
Page 23

697463.3